**2023 IL 127119**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 127119)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
DION ADDISON, Appellee.

*Opinion filed April 20, 2023.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Justices Neville, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

Chief Justice Theis dissented, with opinion, joined by Justice Overstreet.

## OPINION

¶ 1 At issue is whether (1) postconviction counsel rendered unreasonable assistance by failing to frame the issues in defendant Dion Addison's amended postconviction petition as ones of ineffective assistance of appellate counsel and, if so, (2) the appellate court properly remanded the case for compliance with Illinois

Supreme Court Rule 651(c) (eff. July 1, 2017) without considering the merits of the petition. We answer both questions in the affirmative and therefore affirm the appellate court's judgment.

¶ 2                                    BACKGROUND

¶ 3        On February 22, 2012, defendant, Dion Addison, was charged by indictment with unlawful possession of a motor vehicle, unlawful possession of a converted motor vehicle, forgery, and two counts of theft. The charges arose out of his alleged use of counterfeit money to purchase a motorcycle. He was released on bond. Defendant failed to appear for trial and was tried *in absentia*.

¶ 4        The jury convicted defendant on all counts. The Kane County circuit court entered judgment on the guilty verdicts and scheduled the sentencing hearing for March 20, 2013. On March 19, 2013, new posttrial counsel filed a motion for judgment notwithstanding the verdict or a new trial. The trial court denied that motion and sentenced the defendant to concurrent terms of 15 years' imprisonment for unlawful possession of a stolen motor vehicle and five years' imprisonment for forgery.

¶ 5        Shortly thereafter, defendant was arrested. He appeared with posttrial counsel for a hearing on his motion to reconsider sentence. The trial court denied that motion, and defendant appealed.

¶ 6        On September 24, 2014, defendant spoke on the telephone with appellate counsel. The next day, appellate counsel sent a letter to defendant memorializing their telephone conversation. Appellate counsel told defendant, "As I mentioned during our conversation, the only issue that I found to raise in the appeal was that you are entitled to credit for one more day against your sentence. I wish that I could have found an issue that would provide a basis for overturning your conviction or reducing your sentence more substantially, but unfortunately I was unable to do so." Appellate counsel did not file a brief on the merits. Instead, counsel filed an agreed motion regarding the sentencing credit. In that motion, appellate counsel stated, "After reviewing the complete record on appeal in this case, undersigned counsel has determined that there are no meritorious issues, except for an issue concerning the amount of credit that should be applied toward the defendant's

prison sentences." On October 23, 2014, the appellate court granted that motion and awarded defendant two days' credit in a minute order.

¶ 7 On March 25, 2015, defendant filed a *pro se* postconviction petition, contending that "trial counsel was deficient in failing to give a good faith defense, failing to investigate, argue points of evidence favorable to defendant, and give defense theory" and that appellate counsel was deficient in failing to raise issues and investigate. Defendant proceeded to render his constitutional claims in more detail, raising 15 issues. In 14 of those, defendant alleged that appellate counsel failed to raise the issue. Defendant included his own affidavit as support for his petition.

¶ 8 The trial court advanced the petition to the second stage and appointed counsel on May 15, 2015. More than two years later, on July 17, 2017, postconviction counsel filed an amended petition. The petition asserted five claims: (1) trial counsel was ineffective for failing to file a motion to suppress statements on grounds of improper *Miranda* warnings (see *Miranda v. Arizona*, 384 U.S. 436 (1966)); (2) trial counsel was ineffective for failing to file a motion to suppress statements on grounds that defendant's statement was involuntary; (3) trial counsel was ineffective for failing to object to expert testimony regarding counterfeit currency when no expert was disclosed; (4) trial counsel was ineffective for failing to argue sufficiency of the evidence where there was a discrepancy in the number of notes recovered, inventoried, and introduced as evidence; and (5) the court erred in giving an accountability instruction to the jury. Counsel developed each of these claims over multiple pages of the amended petition. The petition did not assert any claims of ineffective assistance of appellate counsel and nowhere alleged any way in which appellate counsel was ineffective. Postconviction counsel also filed a Rule 651(c) certificate, stating that she had consulted with defendant to ascertain his constitutional claims, she had examined the court file and trial record, and she had made any amendments to defendant's *pro se* petition necessary to adequately present his claims.

¶ 9 The State filed a motion to dismiss the amended petition, arguing that defendant's claims were forfeited because they could have been raised on direct appeal. Moreover, the State pointed out that defendant had failed to challenge his

appellate counsel's strategic decision not to raise these issues on appeal. The motion also alleged that the petition's claims were without merit.

¶ 10 On July 10, 2018, a hearing was held on the State's motion to dismiss. At that hearing, the State continued to point out that these claims could have been raised on direct appeal and that ineffective assistance of appellate counsel had not been alleged. The State made arguments such as:

> "Again, counsel was not ineffective. And, Judge, this claim is waived anyways, procedurally barred where defendant could have raised it on direct appeal but did not. *And the strategy of appellate counsel has not been challenged*.

> * * *

> Again, judge, this is another claim that was available on appeal and not raised. And, again, as the strategy of counsel has not been challenged, this claim, too, is procedurally barred." (Emphasis added.)

Postconviction counsel presented a lengthy argument in opposition to the motion to dismiss and never once countered the State's assertion that she had failed to allege ineffective assistance of appellate counsel.

¶ 11 After listening to the parties' arguments, the only questions the trial court had for postconviction counsel concerned the State's forfeiture argument:

> "[THE COURT]: One of the arguments that hasn't been addressed in great detail but is addressed in the State's motion to dismiss is the concept of waiver.

> And so could you address why you don't believe that these issues that you have addressed would not and could not have been raised on direct appeal?

> [POSTCONVICTION COUNSEL]: Your Honor, on information and belief, having spoken to my client, his appellate counsel represented to him that if it wasn't specifically argued at trial that he could not use that information.

> * * *

> [THE COURT]: *** I am just asking on the waiver argument.

- 4 -

Everything that has been presented by way of the amended [postconviction petition] are arguments that I believe could have been made on direct appeal. Arguments that you have brought forth are all matters that were in the record.

So you don't have to answer. I just wondered if you wished to address it.

* * *

[POSTCONVICTION COUNSEL]: Other than that perhaps there was the same oversight on the appellate level as the trial counsel had."

¶ 12    The trial court granted the State's motion to dismiss, stating that the defendant was not entitled to an evidentiary hearing because he "failed to make a substantial showing of any violation of a Constitutional right." The trial court also entered a written order, which concluded that the defendant "failed to make a substantial showing of a violation of a constitutional right." Neither in open court nor in the written order dismissing the petition did the trial court discuss the merits of defendant's claims. The defendant appealed, arguing that postconviction counsel rendered unreasonable assistance in failing to file his affidavit and failing to argue ineffective assistance of appellate counsel.

¶ 13    The appellate court reversed and remanded. 2021 IL App (2d) 180545. The appellate court initially rejected the State's argument that the defendant forfeited collateral review of his conviction by failing to appear at trial. *Id.* ¶ 20. The court then turned to the merits, addressing the defendant's contention that postconviction counsel rendered unreasonable assistance by failing to amend his *pro se* petition with ineffective assistance of appellate counsel claims. *Id.* ¶ 27.

¶ 14    The appellate court explained that any postconviction claims that could have been raised on direct appeal, but were not, are forfeited. *Id.* ¶ 28. However, the court explained that this forfeiture may be overcome by framing the issues as ones of ineffective assistance of appellate counsel for failing to raise the issues on direct appeal. *Id.* Here, postconviction counsel failed to do so. The appellate court noted that postconviction counsel alleged multiple claims of ineffective assistance of trial counsel but did not address the performance of appellate counsel. *Id.* ¶ 29. Further, she did not attempt to present such claims in response to the State's motion to dismiss, which had raised the issue of forfeiture. *Id.* The appellate court concluded

that postconviction counsel rendered unreasonable assistance by failing to frame defendant's claims as ones of ineffective assistance of appellate counsel for failing to raise the claims on direct appeal. *Id.* The court noted that in *People v. Turner*, 187 Ill. 2d 406, 414 (1999), this court held that a failure of postconviction counsel to make a routine amendment to a petition in order to overcome a procedural bar is " 'patently unreasonable.' " 2021 IL App (2d) 180545, ¶ 28 (quoting *People v. Kluppelberg*, 327 Ill. App. 3d 939, 947 (2002)). Thus, the court determined that a remand was required. The court cited *People v. Suarez*, 224 Ill. 2d 37, 47 (2007), for the proposition that, where appointed counsel has not complied with Rule 651(c), a remand is required regardless of whether the petition's claims have any merit. 2021 IL App (2d) 180545, ¶ 30.

¶ 15     This court allowed the State's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2020).

¶ 16                                    ANALYSIS

¶ 17     The State raises two issues. First, the State argues that defendant failed to rebut the presumption of reasonable assistance of counsel that arose from postconviction counsel's filing of a Rule 651(c) certificate. According to the State, postconviction counsel was not required to pursue a meritless claim of ineffective assistance of appellate counsel. Second, the State contends that, even if postconviction counsel provided unreasonable assistance, defendant is not entitled to a remand unless she can show prejudice. We review a trial court's dismissal of a postconviction petition at the second stage *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29. Additionally, when the issue concerns the proper interpretation of a supreme court rule, our review is *de novo*. *People v. Henderson*, 217 Ill. 2d 449, 458 (2005).

¶ 18     Under the Post-Conviction Hearing Act (Act), a criminal defendant may claim that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2016). The Act provides a three-stage mechanism for a defendant to advance such a claim. See *People v. Custer*, 2019 IL 123339, ¶ 29. At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). If

- 6 -

the petition is not summarily dismissed, it must be docketed for further consideration in the second stage. *Id.* § 122-2.1(b). At the second stage, the trial court may appoint counsel to assist an indigent defendant. *Id.* § 122-4.

¶ 19    In a postconviction proceeding, there is no constitutional right to the assistance of counsel. See *Custer*, 2019 IL 123339, ¶ 30. Instead, the right to counsel is a matter of "legislative grace." *People v. Porter*, 122 Ill. 2d 64, 73 (1988). That is, a postconviction petitioner is entitled only to the level of assistance granted by the Act, which we have labeled a " 'reasonable' level of assistance" (*People v. Flores*, 153 Ill. 2d 264, 276 (1992)), which is less than that afforded by the federal and state constitutions (*People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)). We have explained that the distinction is rational "because trial counsel plays a different role than counsel in post-conviction proceedings." *People v. Owens*, 139 Ill. 2d 351, 364 (1990). At trial, counsel "acts as a shield" to protect a defendant from being stripped of the presumption of innocence. *Id.* Postconviction petitioners, by contrast, have already been stripped of the presumption of innocence and have generally failed to obtain relief on direct review of their convictions. *Id.* at 365. The petitioner, rather than the State, initiates the proceeding by claiming that constitutional violations occurred at his trial. *Id.* Counsel is appointed not to protect postconviction petitioners from the prosecutorial forces of the State but to shape their complaints into the proper legal form and to present those complaints to the court. *Id.*

¶ 20    To ensure that postconviction petitioners receive that level of assistance, Rule 651(c) provides:

> "The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 21    Compliance with the rule is mandatory (*People v. Perkins*, 229 Ill. 2d 34, 50 (2007)), but once postconviction counsel files a Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises (*Custer*, 2019 IL 123339, ¶ 32). The defendant bears the burden of overcoming that presumption by showing that

postconviction counsel did not substantially comply with the strictures of the rule. *People v. Gallano*, 2019 IL App (1st) 160570, ¶ 26. The defendant may do so by, *inter alia*, demonstrating that postconviction counsel did not make all necessary amendments to the *pro se* petition. See *Turner*, 187 Ill. 2d at 412 (citing *People v. Johnson*, 154 Ill. 2d 227, 238 (1993)). This includes making amendments that are necessary to overcome procedural bars. *Perkins*, 229 Ill. 2d at 44.

¶ 22                                I. Failure to Provide Reasonable Assistance

¶ 23       Here, we hold that postconviction counsel failed to provide defendant with the reasonable assistance of counsel. Defendant's *pro se* petition raised 15 issues. The petition shows that defendant understood the need to frame his issues as ineffective assistance of appellate counsel. When a petitioner is asserting claims that could have been raised on direct appeal, he can avoid the procedural bar of forfeiture by casting his claims as ineffective assistance of appellate counsel for failing to raise the issues on direct appeal. *Turner*, 187 Ill. 2d at 413. For 14 of his claims, defendant specifically alleged that appellate counsel had failed to raise them on appeal. He further alleged that his constitutional rights were violated by appellate counsel's failure to conduct a proper investigation and to raise these issues on appeal.

¶ 24       Postconviction counsel determined that some of defendant's claims were worth pursuing and filed an amended petition raising five issues. Although these were all issues that could have been raised on direct appeal, the petition did not assert any claims of ineffective assistance of appellate counsel and nowhere alleged any way in which appellate counsel was ineffective.[1] Thus, we are faced with the unusual

---

[1] In the petition's conclusion, it stated that "Defendant received ineffective assistance of counsel during pre-trial proceedings, during post-trial proceedings, and at the appellate level." The State has never contended—nor could it—that this was a substantive claim of ineffective assistance of appellate counsel. The petition contains no explanation of *how* appellate counsel was ineffective. For instance, it is nowhere alleged that appellate counsel was ineffective for failing to raise the claims asserted in the petition. Moreover, even if one were to assume for the sake of argument that these few words in the petition's conclusion were a "claim," that would not end our inquiry. Rule 651(c) requires that appointed counsel make any amendments to the *pro se* petition that are "necessary for an *adequate presentation* of petitioner's contentions." (Emphasis added.) Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Postconviction counsel's obligation is to present the defendant's postconviction claims to the court in the appropriate legal form. *Johnson*, 154 Ill. 2d at 245. We could obviously not consider this an *adequate presentation* of an ineffective assistance of appellate

- 8 -

situation in which postconviction counsel, in one significant sense, made the *pro se* petition worse by amending it.

¶ 25    When the State filed its motion to dismiss, it led off by arguing that all of defendant's claims were forfeited because he could have raised them on direct appeal. The State pointed out that defendant had failed to challenge his appellate counsel's strategic decision not to raise these issues on appeal. Postconviction counsel did not thereafter amend the petition in response to the State's forfeiture argument. At the hearing on the motion to dismiss, the State continued to point out that these claims could have been raised on direct appeal and that ineffective assistance of appellate counsel had not been alleged. The State made arguments such as:

> "Again, counsel was not ineffective. And, Judge, this claim is waived anyways, procedurally barred where defendant could have raised it on direct appeal but did not. *And the strategy of appellate counsel has not been challenged.*
>
> * * *
>
> Again, judge, this is another claim that was available on appeal and not raised. And, again, as the strategy of counsel has not been challenged, this claim, too, is procedurally barred." (Emphasis added.)

Postconviction counsel presented a lengthy argument in opposition to the motion to dismiss and never once countered the State's assertion that she had failed to allege ineffective assistance of appellate counsel. We cannot hold that postconviction counsel provided reasonable assistance where she identified several claims that she believed were worth pursuing but did not make the necessary

---

counsel claim when (1) it is raised in such an obscure way that no one recognizes it as being in the petition, (2) the petition fails to set forth any way in which appellate counsel was ineffective, (3) the State moves to dismiss the petition on the basis that it contains no ineffective assistance of appellate counsel claim, (4) postconviction counsel never challenges the State's assertion that the petition contains no allegation of ineffective assistance of appellate counsel, and (5) the trial court rules on the petition with the understanding that it contains no claims of ineffective assistance of appellate counsel. Thus, even if one were to assume for the sake of argument that postconviction counsel had asserted a claim of ineffective assistance of appellate counsel in the petition, she clearly did not do so in a way that complied with Rule 651(c).

amendments to put the claims in their proper form. Worse than that, she *eliminated* the necessary allegations that defendant had included in the *pro se* petition.

¶ 26 For several reasons, the State argues that postconviction counsel's performance was not unreasonable. First, the State cites *People v. Greer*, 212 Ill. 2d 192, 205 (2004), for the proposition that the requirement that postconviction counsel make any necessary amendment to the *pro se* petition does not mean that counsel is required to advance frivolous or spurious claims. *Greer* explained that, "[i]f amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *Id. Greer* is inapposite. In *Greer*, the postconviction petition was advanced to the second stage only because the trial court failed to rule on it within 90 days. *Id.* at 200. Thus, there had been no determination that the petition presented the gist of a meritorious claim. *Id.* at 202. The trial court appointed counsel, and counsel later moved to withdraw because the defendant's issues were not meritorious and he could find no other meritorious issues to raise. *Id.* at 200. Here, by contrast, the trial court advanced the petition to the second stage because it determined that it stated the gist of a meritorious claim. Postconviction counsel reviewed the petition and determined that five claims were worth pursuing. However, counsel failed to shape the claims into the proper form. We fail to see how it can be reasonable assistance of counsel for an attorney to identify claims worth pursuing but then fail to shape them into proper form.

¶ 27 Second, the State argues that this case differs from *Turner* because in that case the appointed counsel also provided unreasonable assistance in other ways, such as failing to make other necessary amendments to the petition and failing to attach an affidavit. *Turner* held that postconviction counsel's performance was unreasonable given the "totality of circumstances." *Turner*, 187 Ill. 2d at 414. We note that defendant in the present case also alleged that his counsel was unreasonable in failing to attach the affidavit that he had attached to his *pro se* petition, but the appellate court deemed it unnecessary to address that issue because the failure to allege ineffective assistance of appellate counsel necessitated a remand. See 2021 IL App (2d) 180545, ¶ 33. More importantly, however, this court was clear in *Turner* that the failure to allege ineffective assistance of appellate counsel when necessary to overcome a forfeiture was a violation of Rule 651(c). See *Turner*, 187 Ill. 2d at 412-13; see also *Perkins*, 229 Ill. 2d at 44 (citing *Turner*, 187 Ill. 2d at

- 10 -

412-14 (Rule 651(c) requires counsel to amend the *pro se* petition to allege ineffective assistance of appellate counsel to avoid the procedural bar of waiver)). And from defendant's standpoint, there is no difference between the two situations. The failure to shape defendant's claims into their proper form violates Rule 651(c), and the effect of this violation is the same regardless of whether counsel's performance was also deficient in other ways.

¶ 28 The State further points out that there was no Rule 651(c) certificate filed in *Turner*. The State argues that the fact that a Rule 651(c) violation occurs when counsel fails to make a necessary allegation of ineffective assistance of appellate counsel does not mean that such a failure necessarily overcomes the presumption created by filing a certificate. This argument makes little sense. It is difficult to imagine what would more clearly rebut the presumption created by the certificate than the record demonstrating what this court has already defined to be a clear violation of Rule 651(c).

¶ 29 The State next contends that this court was incorrect in *Turner* when it stated that, if counsel had alleged ineffective assistance of appellate counsel, the claims would not have been barred by waiver. See *Turner*, 187 Ill. 2d at 413. The State claims that this court later held in *People v. English*, 2013 IL 112890, that only a meritorious claim of ineffective assistance of appellate counsel overcomes forfeiture. Once again, the State is comparing cases that were decided in different procedural settings. *Turner* involved a second-stage dismissal of a postconviction petition where the circuit court granted the State's motion to dismiss because all of the defendant's claims could have been raised on direct appeal. The analysis centered on what duties Rule 651(c) requires at the second stage. *English* involved a denial of a petition after a third-stage hearing. This court concluded that the issue the defendant was pursuing was forfeited because it could have been raised on direct appeal. *Id.* ¶ 31. This court then considered defendant's argument that, if this court found the issue forfeited, then it should conclude that appellate counsel was ineffective for failing to raise it on direct appeal. *Id.* ¶ 32. This court then considered defendant's ineffective assistance of appellate counsel claim substantively, by applying the test from *Strickland v. Washington*, 466 U.S. 668 (1984). *English*, 2013 IL 112890, ¶ 33. The court determined that, at the time of the defendant's direct appeal, precedent did not support the issue that the defendant was raising in his postconviction petition. *Id.* ¶ 35. Accordingly, it was not unreasonable for

- 11 -

appellate counsel to determine that the issue was unlikely to succeed on appeal and to pursue other issues instead. *Id.* This court therefore concluded that appellate counsel's performance was not deficient. The court then stated that "the issue is forfeited, and the forfeiture is not excused based on ineffective assistance of appellate counsel." *Id.* This was a situation in which the court substantively considered a claim of ineffective assistance of appellate counsel under the *Strickland* standard. The *English* court did not address what constitutes reasonable assistance of counsel at the second stage of postconviction proceedings.

¶ 30      Finally, the State argues that counsel's determination of which *pro se* allegations should be pursued in the amended petition should be afforded deference. The State cites *People v. Rogers*, 197 Ill. 2d 216, 223 (2001), for the proposition that, in judging the performance of appellate counsel, a reviewing court defers to counsel's determination of a potential claim's merit. According to the State, it would be "strange, indeed" if a similar standard did not govern review of statutorily provided postconviction counsel's performance. Again, though, postconviction counsel determined that there were five issues from defendant's *pro se* petition that were worth pursuing, but she did not shape them into proper form. Indeed, she *eliminated* the necessary allegations from defendant's *pro se* petition. If we defer to counsel's decision to pursue these five issues, why would we then hold that it was reasonable for counsel to fail to shape them into a form that would allow them to be considered?

¶ 31                                      II. Remand

¶ 32      We next consider whether postconviction counsel's unreasonable performance requires a remand for compliance with Rule 651(c).

¶ 33      Because counsel did not comply with Rule 651(c), our case law dictates that the cause should be remanded without a consideration of whether the petition's claims have merit. In *Suarez*, 224 Ill. 2d at 47, this court reiterated that it has consistently held that, when postconviction counsel does not fulfill his or her duties under Rule 651(c), remand is required "regardless of whether the claims raised in the petition had merit." The court noted that it had held the following in *People v. Brown*, 52 Ill. 2d 227, 230 (1972):

" '[T]he purpose underlying Rule 651(c) is not merely formal. It is to ensure that all indigents are provided proper representation when presenting claims of constitutional deprivation under the Post-Conviction Hearing Act. [Citation.] The fulfillment of this design would not be encouraged were we to ignore the rule's nonobservance in those cases appealed to this court.' " *Suarez*, 224 Ill. 2d at 51 (quoting *Brown*, 52 Ill. 2d at 230).

In *Suarez*, the State asked this court to overrule decades of precedent and hold that noncompliance could be excused on the basis of harmless error when the claims in the petition lack merit. *Id.* at 49. This court declined the State's invitation:

"Our analysis, however, does not depend upon whether the *pro se* or supplemental petitions in this case did or did not contain potentially meritorious issues. *Our Rule 651(c) analysis has been driven, not by whether a particular defendant's claim is potentially meritorious, but by the conviction that where postconviction counsel does not adequately complete the duties mandated by the rule, the limited right to counsel conferred by the Act cannot be fully realized.* [Citations.] We have consistently declined the State's invitation to excuse noncompliance with the rule on the basis of harmless error. We have refused to address questions that are properly determined in the first instance by the circuit court. The State presents no new persuasive arguments that would justify departing from our prior case law. Accordingly, we decline to hold that noncompliance with Rule 651(c) may be excused on the basis of harmless error." (Emphasis added.) *Id.* at 51-52.[2]

¶ 34    The State argues that *Suarez* is limited to situations in which postconviction counsel did not file a certificate of compliance. We disagree. As we explained above, the certificate merely creates a rebuttable presumption of reasonable assistance of counsel. *Custer*, 2019 IL 123339, ¶ 32. Here, defendant clearly rebutted the presumption of reasonable assistance because postconviction counsel failed to frame his claims as ineffective assistance of appellate counsel. In fact, postconviction counsel eliminated the claims of ineffective assistance of appellate counsel that defendant had made in the *pro se* petition. Once a petitioner has

---

[2]In this appeal, the State argues that, if *Suarez* means what it says, then this court should overrule it. For the reasons this court declined to overrule decades of its precedent in *Suarez*, we likewise decline to overrule *Suarez*.

rebutted the presumption of reasonable assistance, he is in the same position as a petitioner in a case in which no certificate was filed and the record did not otherwise show compliance. Accordingly, *Suarez* is dispositive of this appeal, and a remand is required.

¶ 35　　Citing *People v. Landa*, 2020 IL App (1st) 170851, ¶ 58, and *Gallano*, 2019 IL App (1st), 160570 ¶ 30, the State argues that, in cases in which a Rule 651(c) certificate has been filed, a postconviction petitioner may not obtain a remand without demonstrating prejudice. Those decisions held that *Suarez*'s statement that it does not matter whether a particular defendant's postconviction claims have merit applies only when counsel fails to file a Rule 651(c) certificate. We note, however, that *Landa* also said that the *Suarez* rule "may also apply where counsel has failed to perform one of the three specific duties outlined in that rule." *Landa*, 2020 IL App (1st) 170851, ¶ 58. Here, defendant is alleging that postconviction counsel failed to make the necessary amendments for an adequate presentation of his claims. Regardless, *Suarez* nowhere said that the rule it set forth applies only when postconviction counsel fails to file a certificate. Rather, we held that harmless error analysis does not apply where compliance with Rule 651(c) is not shown and that such compliance must be shown regardless of whether the claims made in the petition are viable. *Suarez*, 224 Ill. 2d at 51-52. The notion that harmless error analysis would apply in all cases where a Rule 651(c) certificate has been filed is incompatible with the certificate merely creating a *rebuttable presumption* of reasonable assistance. Once the presumption has been rebutted, it would make no sense to treat the petitioner differently than the petitioner in any other case in which compliance with the rule is not shown.

¶ 36　　The State further contends that *Suarez* is limited to situations in which there is a complete failure of counsel to comply with basic Rule 651(c) duties. *Suarez* contains no such limitation, and indeed, the attorney in that case had filed an amended petition on the defendant's behalf that expanded on the defendant's *pro se* claim and also raised an additional claim. *Id.* at 41. But this court held that compliance with Rule 651(c) was not shown where there was no showing in the record that postconviction counsel had consulted with the defendant before filing the petition. *Id.* at 42-44. And in *Brown* we held that a remand was required for the sole reason that the record did not show that postconviction counsel had examined the trial record. *Brown*, 52 Ill. 2d at 230.

¶ 37    The State argues that remanding without a showing of prejudice is illogical because it makes it easier to succeed on a claim of unreasonable assistance of postconviction counsel than it is to succeed on a claim of ineffective assistance of counsel under *Strickland*. The problem with trying to compare an unreasonable assistance claim with a *Strickland* claim is that, at the second stage of postconviction proceedings, counsel's specific duties are prescribed by Illinois Supreme Court rule. As this court has explained:

> "Commensurate with the lower reasonable assistance standard mandated in postconviction proceedings, Illinois Supreme Court Rule 651 (eff. July 1, 2017) sharply limits the requisite duties of postconviction counsel. They are required only to certify that they have 'consulted with the petitioner by phone, mail, electronic means or in person,' 'examined the record' as needed to shape the defendant's *pro se* claims, and 'made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation' of those claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017)." *Custer*, 2019 IL 123339, ¶ 32.

And, as *Suarez* explained, when these limited duties are not carried out, "[t]his court has consistently held that remand is required *** regardless of whether the claims raised in the petition have merit." *Suarez*, 224 Ill. 2d at 47. Our case law thus clearly establishes that *all* postconviction petitioners are entitled to have counsel comply with the limited duties of Rule 651(c) before the merits of their petitions are determined. We further note that there is a significant difference between what it means to "succeed" on a claim of unreasonable assistance of counsel at the second stage of postconviction proceedings and a claim of ineffective assistance of counsel under *Strickland*. The remedies for the two claims are vastly different. A defendant who succeeds on a claim of ineffective assistance of counsel under *Strickland* is entitled to a new trial. A defendant who successfully argues that his attorney failed to provide reasonable assistance at the second stage of postconviction proceedings is merely entitled to a remand for his attorney to comply with the limited duties required by Rule 651(c).

¶ 38    The State further argues that in certain contexts the appellate court has required a showing of prejudice when a defendant is raising a claim of unreasonable assistance of postconviction counsel. See *People v. Pabello*, 2019 IL App (2d) 170867 (evaluating postconviction counsel's performance at a third-stage

- 15 -

evidentiary hearing); *People v. Hotwagner*, 2015 IL App (5th) 130525 (same). A comparison with cases considering unreasonable assistance claims at the third stage is illogical, as this court has not prescribed by rule specific duties that counsel must perform at the third stage. In both *Pabello* and *Hotwagner*, the appellate court was faced with an argument that postconviction counsel provided unreasonable assistance at a third-stage evidentiary hearing. In *Pabello*, the court noted that Rule 651(c) governs counsel's duties at the second stage and that the third stage is simply governed by a general reasonableness standard. *Pabello*, 2019 IL App (2d) 170867, ¶¶ 26-29. The court then analyzed the defendant's claim of unreasonable assistance at the third stage by considering the defendant's claim under *Strickland*. *Id.* at 37. The court reasoned that, if counsel's performance complied with the higher *Strickland* standard, then it necessarily met the lower reasonableness standard. *Id.* at 36. The *Hotwagner* court used the same analysis and reasoning. See *Hotwagner*, 2015 IL App (5th) 130525, ¶ 37 ("[i]t further stands to reason that if postconviction counsel's performance cannot be deemed deficient under *Strickland*, it cannot be said that counsel failed to provide the reasonable level of assistance required under the Act"). Neither case provides any precedent for requiring a prejudice showing at the second stage, where counsel's limited duties are prescribed by Illinois Supreme Court rule.

¶ 39    Finally, the State argues that a remand is not required here because the trial court dismissed the petition on the merits rather than finding that the claims were forfeited. In *Turner*, this court held that a remand was required where postconviction counsel had failed to make a routine amendment—alleging ineffective assistance of appellate counsel—that was necessary to avoid forfeiture of the petitioner's claims. *Turner*, 187 Ill. 2d at 413-14. The State argued that the petitioner was not prejudiced because the underlying claims were without merit. *Id.* at 415. This court disagreed, explaining that the prejudice to the petitioner was palpable where the failure to make the necessary amendment to avoid forfeiture led directly to the dismissal of the petitioner's claims without a consideration of their merits. *Id.* In that case, the trial court found that the petitioner's claims were waived because they could have been raised on direct appeal. *Id.* at 412-13. The State argues that a different result is required here because the court dismissed the petition on the merits rather than on the basis of forfeiture.

¶ 40 There are two problems with the State's argument. First, it is simply not possible to tell from this record that forfeiture played no part in the trial court's decision. At no point, either in open court or in its written order, did the trial court explain why defendant's claims lacked merit. After listening to the parties' arguments, the one question that the trial court had for defense counsel was "could you address why you don't believe that these issues that you have addressed would not and could not have been raised on direct appeal?" When defense counsel did not directly answer the question, the court said, "[e]verything that has been presented by way of the amended [postconviction petition] are arguments that I believe could have been made on direct appeal. Arguments that you have brought forth are all matters that were in the record." When the trial judge thereafter dismissed the petition, he merely quoted—both in open court and in the written order—the statutory standard that the petition had failed to make a substantial showing of a violation of a constitutional right. But it is clear from the record that the trial court ruled on the petition under the belief that all of the claims could have been made on direct appeal and that there was no allegation of ineffective assistance of appellate counsel in the petition. If the only viable claims that defendant had were not in the petition, then the petition necessarily did not make a substantial showing of a violation of a constitutional right. It is simply not possible to say from this record that the failure to allege ineffective assistance of appellate counsel played no part in the trial court's decision.

¶ 41 Second, the State does not sufficiently consider *Turner*'s principal holding. After noting that the petitioner did suffer prejudice, the court held that, on a more fundamental level, it would not be appropriate to affirm the dismissal of the petition when counsel had not shaped the claims into the proper form. The court cited *Johnson* for the proposition that it would not "speculate whether the trial court would have dismissed the petition without an evidentiary hearing if counsel had adequately performed his duties under Rule 651(c)." *Id.* at 416 (citing *Johnson*, 154 Ill. 2d at 246). This court explained that, when counsel has not complied with Rule 651(c), the court will not consider the merits of the petition:

"[I]n this case it is improper to determine the merit of petitioner's claims where counsel essentially did nothing to shape the petitioner's claims into the appropriate legal form. To tolerate such inadequate representation would render the appointment of counsel in post-conviction proceedings nothing but 'an

- 17 -

empty formality.' *People v. Garrison*, 43 Ill. 2d 121, 123 (1969); *People v. Wilson*, 40 Ill. 2d 378, 381 (1968) (representation by appointed counsel in post-conviction proceedings must be more than mere 'tokenism'). Petitioner must be given an opportunity to replead his post-conviction petition with the benefit of reasonable assistance of counsel.

We reiterate that we express no opinion on the merit of the claims in petitioner's post-conviction petition or even whether an evidentiary hearing on his claims would be appropriate in this case. On remand, the trial court will have an opportunity to evaluate the claims in petitioner's post-conviction petition once petitioner's counsel has made any amendments to the petition which are necessary for an adequate presentation of petitioner's contentions. *Johnson*, 154 Ill. 2d at 249." *Id.* at 416-17.

¶ 42 In other words, in response to the State's argument that the petitioner suffered no prejudice because the underlying claims lacked any merit, this court held that (1) the petitioner *was* prejudiced because the trial court found his claims to be forfeited but, (2) regardless, it is inappropriate to consider the merits of the claims in the petition when counsel has not complied with Rule 651(c) by shaping the claims into the appropriate form. It was this latter part of the holding that this court quoted and discussed in *Suarez*. See *Suarez*, 224 Ill. 2d at 48. *Suarez* viewed *Turner* as one in a long line of cases holding that, when appointed counsel does not adequately fulfill his or her duties under Rule 651(c), a remand is required regardless of whether the petition's claims have merit. *Id.* at 47-49. Here, where postconviction counsel took claims that were asserted in their proper form and turned them into claims that were not in the proper form, defendant is entitled to the same relief that the petitioner in *Turner* obtained.

¶ 43                                    CONCLUSION

¶ 44 Postconviction counsel did not comply with Rule 651(c), because she failed to shape defendant's claims into proper form. Defendant had made the necessary claims of ineffective assistance of appellate counsel when he filed his *pro se* petition, but postconviction counsel eliminated these claims when she filed the amended petition. Defendant has thus rebutted the presumption of reasonable assistance that arose from postconviction counsel's Rule 651(c) certificate.

Pursuant to *Suarez*, the appellate court correctly remanded the cause for compliance with Rule 651(c) without considering whether the claims in the petition were meritorious. We therefore affirm the appellate court's judgment, which reversed the judgment of the circuit court.

¶ 45    Appellate court judgment affirmed.

¶ 46    Circuit court judgment reversed.

¶ 47    CHIEF JUSTICE THEIS, dissenting:

¶ 48    The majority phrases the issue in this case as whether postconviction counsel rendered unreasonable assistance by failing to frame the issues in the defendant's amended postconviction petition as ones of ineffective assistance of appellate counsel and, if so, whether the appellate court properly remanded the case for compliance with Rule 651(c) (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)) without considering the petition's merits.[3] *Supra* ¶ 1. In my view, the majority's conclusion on the first part of that issue was incorrect, obviating the need to reach the second part.

¶ 49    The State filed a motion to dismiss the amended petition, arguing that the defendant's claims were forfeited because they could have been raised on direct appeal and that he failed to make a substantial showing of a constitutional violation. The trial court granted the State's motion to dismiss, stating that the defendant was not entitled to an evidentiary hearing because he "failed to make a substantial showing of any violation of a Constitutional right." The trial court also entered a written order, stating:

> "The Court has considered the arguments made in the written pleadings as well as the arguments made at the hearing today. The Petitioner has failed to make a substantial showing of a violation of a constitutional right."

---

[3]Postconviction counsel did file a Rule 651(c) certificate to accompany the amended petition.

¶ 50    Certainly, the majority is correct that the trial court did not discuss the merits of the defendant's claims in either its oral ruling or its written order. The majority, however, hears from that silence the reasoning behind the trial court's decision. According to the majority, the trial court's exchange with postconviction counsel on the subject of "waiver" during the hearing on the State's motion means that the court disposed of the petition on that ground—*i.e.*, "understanding that it contain[ed] no claims of ineffective assistance of appellate counsel." *Supra* ¶ 24 n.1.

¶ 51    I do not possess such clairvoyance, and I would take the trial court's words literally. The trial court considered the parties' arguments, which included arguments regarding the merits of the amended petition and concluded, without mentioning procedural default, that the petition did not meet the second-stage standard for legal sufficiency. See *People v. Domagala*, 2013 IL 113688, ¶ 35 (stating that "the 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation"). As we have held, a defendant fails to make such a showing when the claims in the petition "lack merit." *People v. Pingelton*, 2022 IL 127680, ¶ 66. The court should presume that the trial court's decision was in conformity with the law. *Cf. Foutch v. O'Bryant*, 99 Ill. 2d 389, 393 (1984).

¶ 52    Further, because I cannot fathom how trial counsel was ineffective and how appellate counsel could have asserted that he was, I cannot conclude that postconviction counsel rendered unreasonable assistance by including an underdeveloped claim of ineffective assistance of appellate counsel in the amended petition. The majority glosses over the trial proceedings, stating simply, "Defendant failed to appear for trial and was tried *in absentia*." *Supra* ¶ 3. To properly contextualize the parties' arguments in this appeal, a more detailed recitation of the factual background is necessary.

¶ 53    In mid-2011, Kevin Ziegler listed a 1995 Suzuki motorcycle for sale online. The defendant contacted Ziegler and asked to see the motorcycle. On June 19, 2011, the defendant and his friend Kenny Drake went to Ziegler's apartment. Drake took the motorcycle for a test drive and told the defendant that it was in good condition. The defendant offered Ziegler $3000 for the motorcycle. Ziegler accepted. The

defendant gave Ziegler $3000 in cash, and Ziegler gave the defendant the title and the keys to the motorcycle. Ziegler soon realized that the currency was probably counterfeit, and he called the police. The defendant was ultimately arrested for an unrelated traffic offense and transported to the Geneva Police Department. The defendant was placed in a booking room, while Geneva police officer Robert Bailey contacted Special Agent Shannon McDowell of the United States Secret Service counterfeit currency unit. The next morning, McDowell arrived at the police station. McDowell confirmed that all of the currency was counterfeit—the bills lacked security features and had repeating serial numbers.

¶ 54     McDowell then spoke to the defendant. McDowell read him *Miranda* warnings from a Secret Service form. See *Miranda v. Arizona*, 384 U.S. 436 (1966). The form advised the defendant:

> "You must understand your rights before we ask you any questions.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court, or other proceedings.
>
> You have the right to talk to a lawyer for advice before we question you and to have him with you during questioning.
>
> If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court. If you decide to answer questions now without a lawyer present, you will still have the right to stop the questioning at any time. You also have the right to stop the questioning at any time until you talk to a lawyer.
>
> I have read this statement of my rights and it has been read to me, and I understand what my rights are."

The defendant signed the form after those paragraphs.

¶ 55     The form continued:

> "I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kind has been used against me. I hereby voluntarily and intentionally waive my

right to remain silent and my right to have an attorney at this time. I am willing to make a statement and answer questions."

The defendant again signed the form after that paragraph. At the bottom of the page, the defendant, Officer Bailey, and Special Agent McDowell all signed the form to certify that the warnings were recited to the defendant and that he read the form.

¶ 56      McDowell interviewed the defendant. The defendant admitted that he paid Ziegler with counterfeit currency. The defendant was not charged but released from custody. He cooperated with McDowell until July 2011. When the defendant was no longer able to help with the investigation, McDowell stated that he could be charged and arrested in connection with the motorcycle purchase. The defendant was arrested on October 28, 2011.

¶ 57      On February 22, 2012, the defendant was charged by indictment with unlawful possession of a motor vehicle, unlawful possession of a converted motor vehicle, forgery, and two counts of theft. He was released on bond. The defendant missed a September 2012 status hearing, but the parties agreed to schedule a pretrial hearing for January 10, 2013, and trial for January 14.

¶ 58      Defense counsel filed a motion *in limine* to bar the State from eliciting any mention of the defendant's confession at trial. The defendant acknowledged that he purportedly made two confessions—one while in police custody and one while in Secret Service custody. The defendant contended that neither confession was voluntary. He did not specify why the first confession was involuntary, but he claimed that the second confession was involuntary because it "was made after the US Secret Service promised the Defendant that if he confessed that he knowingly used counterfeit bills that he would be released from custody. The promise of being granted his freedom was so alluring to the Defendant that his will was overborn [*sic*]."

¶ 59      When the defendant initially failed to appear in court for the pretrial hearing, the prosecutor asked the court to "go in absentia" on the trial date. Defense counsel objected and revealed his strategy for the case:

"I believe that Mr. Addison is essentially my only true witness as to his mental state, as to whether or not he knew the bills were counterfeit, which I

believe is an essential element of the forgery, the fact the possession of a stolen motor vehicle and the converted motor vehicle. Because if he were just innocently passing along bills that he did not know were fake, I don't believe he would have the mental state for any of those elements.

And without him being present, I won't be able to present any sort of defense on his behalf. So I object to *** the trial in absentia."

¶ 60    The trial court asked defense counsel about scheduling a hearing on any pretrial motions. Defense counsel answered:

"Your Honor, my position would be that without Mr. Addison to perfect some of the claims in my motions, that I don't believe I can necessarily fully proceed with my motions.

I can certainly cross whichever witnesses the State calls regarding the voluntariness and the surrounding circumstances of my client's alleged statements. But he, again, would be my key witness for anything along those lines."

¶ 61    Twenty minutes after the court adjourned, the defendant arrived at defense counsel's office, and the parties returned to court. The trial court admonished the defendant that if he failed to appear for trial, he could be tried, convicted, and sentenced *in absentia*. The defendant indicated that he understood.

¶ 62    On January 14, 2013, the defendant did not appear. The State moved to strike the defendant's motion *in limine* for want of prosecution. Defense counsel objected and renewed his earlier objection to proceeding without the defendant. Defense counsel reiterated that the defendant is "essentially my only witness" and "my best and really only witness" and that "any due process rights that he would have to a fair trial to defending himself are nonexistent if the [S]tate is allowed to proceed in his absence." The trial court paused its call to give the defendant more time to appear. When he still had not, the court instructed defense counsel to proceed with the defendant's motion *in limine*.

¶ 63    Defense counsel argued that the defendant's second inculpatory statement was involuntary because the promise of release in exchange for such a statement overcame his will. The State called Special Agent McDowell as its only witness.

- 23 -

Defense counsel presented no evidence because the defendant was not present, though counsel suggested that the defendant's release implied a promise in exchange for his inculpatory statement. The trial court denied the defendant's motion *in limine*, and the matter immediately proceeded to a jury trial.

¶ 64 The State called Zeigler, Officer Bailey, and Special Agent McDowell as witnesses, then rested its case. Defense counsel moved for a directed verdict, arguing that "the [S]tate's evidence is insufficient to prove the mental state and that no reasonable jury could find Mr. Addison guilty of these crimes." The trial court denied that motion and asked defense counsel if he had any evidence. Defense counsel answered, "I do not," but reserved the right to change that answer if the defendant appeared.

¶ 65 As the majority notes, the jury convicted the defendant on all counts. The trial court entered judgment on the guilty verdicts and scheduled the sentencing hearing for March 20, 2013. On March 19, 2013, new posttrial counsel filed a motion for judgment notwithstanding the verdict or a new trial. In that motion, counsel insisted that "the entire defense strategy relied on the Defendant's presence and testimony and the Defendant's testimony was necessary to prevail on Defendant's motion to bar the Defendant's statements to investigators including the U.S. Secret Service." The trial court denied that motion and sentenced the defendant. Shortly thereafter, the defendant was arrested. He appeared with posttrial counsel for a hearing on his motion to reconsider sentence. The trial court denied that motion, and the defendant appealed.

¶ 66 Again, as the majority notes, appellate counsel communicated by telephone and by mail with the defendant to inform him that there were no meritorious substantive issues to challenge the defendant's conviction and only a sentencing-credit issue that would reduce the defendant's sentence by two days. The appellate court granted that relief in a minute order.

¶ 67 Seventeen months later, the defendant filed a *pro se* postconviction petition, attacking the performance of both trial and appellate counsel. The trial court advanced the petition to the second stage and appointed an attorney, who eventually filed an amended petition, asserting five claims. Among those claims, postconviction counsel argued that trial counsel was ineffective for failing to file a motion to suppress the defendant's inculpatory statement "on grounds of improper

*Miranda* warnings" and that trial counsel was ineffective for failing to file a motion to suppress the statement as involuntary. The amended petition ended by summarizing that "the Defendant received ineffective assistance of counsel during pre-trial proceedings, during post-trial proceedings, and at the appellate level."

¶ 68　　The defendant absented himself from the hearing on his motion *in limine* and his trial. Trial counsel objected to a trial *in absentia* because the defendant was "my key witness," "essentially my only witness," and "my best and really only witness." And, even without the defendant's testimony as support, trial counsel pressed an involuntariness argument. Under those challenging circumstances, trial counsel performed effectively. Appellate counsel had no argument to make regarding the core of the defendant's case, the voluntariness of his confession, because the defendant intentionally sabotaged that argument by not appearing. And because neither trial nor appellate counsel was ineffective, postconviction counsel did not render unreasonable assistance by including an underdeveloped claim of ineffective assistance of appellate counsel in the amended petition. Accordingly, the presumption created by postconviction counsel's Rule 651(c) certificate was not rebutted.

¶ 69　　This case is not one in which the court should make grand pronouncements about postconviction petitions and the strictures of Rule 651(c). Under the unique facts of this case, the court's narrow holding should be to affirm the trial court's dismissal of the defendant's amended petition on its merits.

¶ 70　　I respectfully dissent.

¶ 71　　JUSTICE OVERSTREET joins in this dissent.