2024 IL App (1st) 221308-U

FOURTH DIVISION
Order filed: February 29, 2024

No. 1-22-1308

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 96 CR 28407 |
| | ) | |
| ISRAEL COBIAN, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1 *Held*: In a second-stage postconviction proceeding, postconviction counsel failed to render reasonable assistance under Illinois Supreme Cout Rule 651(c) when counsel adopted the defendant's *pro se* petition in full but did not amend the petition to correct apparent procedural and technical defects in the defendant's claims.

¶ 2 The defendant, Israel Cobian, appeals the second-stage dismissal of his petition for postconviction relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). The defendant contends that he made a substantial showing of ineffective assistance

of appellate counsel and that postconviction counsel failed to provide reasonable assistance in the second-stage proceedings below. We agree with his second argument and reverse the circuit court's judgment.

¶ 3 In 1996, the defendant, who was seventeen years old at the time, was indicted on charges of first-degree murder, attempted first-degree murder, and aggravated discharge of a firearm. The defendant did not appear for trial and was tried before a jury *in absentia*. Testimony at trial established that the defendant and three other men, Angel Ramos, Luis Martinez, and Danny Portalatin, drove past a house where Juan, Gil, and Cesar Guajardo were sitting on the porch. The defendant and the other occupants of the car flashed gang signs at the Guajardos, who responded by giving the defendant and company the middle finger. According to Ramos, who agreed to testify against the defendant in exchange for a reduced sentence, after that exchange, Martinez and the defendant both said that they should "go get the gun." Martinez directed Ramos to drive to a nearby alley. Once there, the defendant got out of the car and retrieved a silver 9mm handgun from behind a neighboring house. Martinez then stated that the gun was loaded with thirteen bullets and told Ramos to drive back to the house where they had seen the Guajardos. When they arrived, the defendant and Martinez exited the car. Martinez then fired between three and five shots at Juan Guajardo, two of which hit him. Juan eventually died from those wounds three weeks later. After shooting Juan, the defendant and Martinez told Ramos that they had to go return the gun. Ramos drove the three men to the same location where they had retrieved the weapon earlier, and the defendant got out of the car to hide the gun.

¶ 4 Police identified Ramos as a suspect based on witness descriptions of the shooters' vehicle, which police believed to be Ramos'. Ramos cooperated and told police where the gun was located.

The police later retrieved the weapon, and ballistics testing confirmed that a bullet that was found in Juan Guajardo's body had been fired from that gun.

¶ 5 After being taken into police custody, the defendant gave a statement that was transcribed by a court reporter. In the statement, the defendant admitted to being in Ramos' car with Ramos, Martinez, and Portalatin, and he admitted to providing the gun that was used to shoot Juan Guajardo. Specifically, he said that Martinez and Portalatin had exchanged gang signs with the Guajardos, and he then told them that he had a gun hidden behind a nearby house. Ramos drove them to the gun's location, and the defendant got out of the car and retrieved it. The defendant admitted that he obtained the gun because Martinez wanted to shoot at the Guajardos. According to the defendant, when they returned to the area where they had encountered the Guajardos, Martinez and Portalatin got out of the car, while the defendant stayed behind with Ramos. The defendant heard a total of seven gunshots, then Martinez and Portalatin came running back to the car. Martinez said that he had shot somebody. The group then drove back to where the defendant had retrieved the gun, and the defendant replaced it.

¶ 6 During the State's rebuttal closing argument, the prosecutor told the jury that "[y]ou heard that Angel Ramos gave a court reported statement too in this case" and commented, over an unspecified objection from defense counsel, that the defense had not impeached him with any inconsistencies between that prior statement and his trial testimony.

¶ 7 The jury found the defendant guilty of first-degree murder. The defendant's trial counsel filed a motion for new trial arguing, among other things, that the State's comments regarding Ramos' unintroduced prior statement had violated his right to due process. The court denied the motion for new trial and then sentenced the defendant to fifty years in prison. The defendant appealed

from the judgment and sentence, but that appeal was dismissed. *People v. Cobian*, 2012 IL App (1st) 980535, ¶ 3.

¶ 8 In 2004, the defendant filed a motion for new trial on the grounds that he had not been admonished that he could be tried *in absentia*. Following a hearing on the motion at which the defendant appeared, the circuit court denied the defendant's motion. The court did, however, vacate the defendant's sentence and conduct a new sentencing hearing. Following that hearing, the court sentenced the defendant to forty-eight years in prison. The defendant again appealed his new sentence. This court affirmed the defendant's conviction but remanded for the circuit court to hold an evidentiary hearing on the defendant's assertion that his absence from trial was the result of circumstances outside of his control. See *id.* ¶ 22. On remand, the court held two evidentiary hearings and denied the defendant's request for a new trial.

¶ 9 On January 10, 2013, the defendant filed a *pro se* petition for postconviction relief under the Act raising forty-one claims for relief: three claims of ineffective assistance of appellate counsel; thirteen claims of prosecutorial misconduct; fifteen claims of ineffective assistance of trial counsel; and ten claims of trial court error. Of relevance to this appeal, among these claims was one that the State committed prosecutorial misconduct when the prosecutor suggested during closing argument that Ramos' trial testimony was consistent with his court-reported statement to police. The defendant also claimed that appellate counsel rendered ineffective assistance by failing to review the complete record to identify and argue all alleged constitutional violations, including
"most of the issues raised in this petition."

¶ 10 The defendant's petition was advanced to the second stage, and counsel was appointed to represent him. On April 23, 2015, counsel filed an Illinois Supreme Court Rule 651(c) (eff. Feb.

6, 2013) certificate averring that he had reviewed the report of proceedings and determined that it was unnecessary to amend or supplement the defendant's petition. The State moved to dismiss the petition, and, following a hearing, the circuit court granted the motion. On appeal, this court vacated the circuit court's ruling, holding that the defendant's postconviction counsel had failed to fulfill the duties mandated by Rule 651(c) when he reviewed only the report of proceedings and not the common law record or trial exhibits. Therefore, we remanded the case to the circuit court

"with instructions to appoint counsel for the defendant and, following counsel's compliance with Rule 651, conduct a second-stage proceeding pursuant to the Act on the defendant's postconviction petition and any amendments thereto which counsel may file." *People v. Cobian*, 2019 IL App (1st) 162655-U, ¶ 14 (Unpublished order under Supreme Court Rule 23).

¶ 11 On remand, new counsel was appointed for the defendant, and new counsel then filed his own Rule 651(c) certificate, which contained the same deficiency as previous counsel's. As before, it did not contain a statement that counsel had reviewed the common law record and trial exhibits. The certificate also stated that "[a] supplemental petition is not being filed, as the *pro se* petition which [*sic*] adequately presents Petitioner's issues." The State then filed a motion to dismiss, which argued, among other things, that most of the defendant's allegations were either conclusory, insufficiently specific, unsupported by requisite argument, unsupported by necessary affidavits or documentation, or procedurally barred by lack of preservation.

¶ 12 In response, the defendant's counsel filed an amended Rule 651(c) certificate stating that he had examined the "record of proceedings, including the common law record, report of proceedings and any exhibits in the possession of the Clerk of the Circuit Court." Counsel also stated in the certificate that he had "examined Petitioner's *pro se* Petition for Post-Conviction

Relief" and that "[a] supplemental petition is being filed to ensure all of the Petitioner's claims are addressed." That supplemental petition contained a prefacing statement that counsel was "ADOPTING ARGUMENTS MADE IN PREVIOUSLY FILED POSTCONVICTION PETITIONS AND IN SUPPORT THEREOF," and counsel then added a claim that the defendant's forty-eight-year sentence was a *de facto* life sentence under *People v. Buffer*, 2019 IL 122327, and that the resentencing court had failed to properly consider the defendant's juvenile status. The supplemental petition did not make any further amendments to the defendant's *pro se* petition.

¶ 13 Following a May 24, 2022, hearing at which the parties presented argument on the State's motion to dismiss, the circuit court granted the State's motion. The court found that trial counsel "didn't do anything wrong" and that the claims against appellate counsel were without merit. Regarding the supplemental sentencing claim, the court concluded that the defendant's sentence did not violate *Buffer* in light of the recent decision in *People v. Dorsey*, 2021 IL 123010, but the court allowed the defendant to file a motion to reconsider sentence on interest-of-justice grounds. The court held a hearing on that matter on August 11, 2022, at which it denied the defendant's motion to reconsider his sentence. On the same day, the defendant filed a notice of appeal from both the May 24 and August 11, 2022, rulings. On July 25, 2023, the defendant filed a motion for a supervisory order in the Supreme Court of Illinois asking the court to direct this court to treat the

August 11, 2022, notice of appeal as a timely and properly-perfected appeal from the May 24, 2022, order dismissing the defendant's postconviction petition. Our supreme court granted the motion on August 11, 2023, and we now consider the defendant's appeal of both orders.

¶ 14 In this appeal, the defendant raises two issues. First, he contends that appellate counsel rendered ineffective assistance by not arguing that the State committed prosecutorial misconduct when alluding to Angel Ramos' unintroduced out-of-court statement during closing argument. Second, he argues that postconviction counsel failed to provide reasonable assistance by not amending his *pro se* petition to correct technical defects, by not producing missing affidavits, and by arguing the meritless *Buffer* claim instead of an allegedly meritorious proportionate-penalties claim. We find merit in the first component of his second issue, which compels that we remand for a new second-stage proceeding and moots any discussion of the remaining arguments.

¶ 15 The Act provides for a three-stage review of petitions for postconviction relief. *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 95. At the second stage, the State may either file an answer to the petition or a motion to dismiss. *Id.* ¶ 97. " 'Where the State seeks dismissal of a postconviction petition instead of filing an answer, its motion to dismiss assumes the truth of the allegations to which it is directed and questions only their legal sufficiency.' " *Id.* (quoting *People v. Miller*, 203 Ill. 2d 433, 437 (2002)). The circuit court "must then determine 'whether the petition and any accompanying documentation make a substantial showing of a constitutional violation.' " *Id.* (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). If the defendant makes such a substantial showing, the petition is advanced to the third stage, where the circuit court "acts as factfinder, determines witness credibility and the weight to be given particular testimony and evidence, and resolves any evidentiary conflicts." *Id.* (quoting *People v. Domagala*, 2013 IL 113688, ¶ 34). When a petition is dismissed at the second stage, our review concerns a pure question of law that we conduct *de novo*. *Id.* ¶ 98.

¶ 16 In postconviction proceedings, there is no constitutional right to counsel. *People v. Addison*, 2023 IL 127119, ¶ 19. Rather, a defendant's right to counsel is provided by statute, and defendants

are only entitled to a "reasonable" level of assistance, "which is less than that afforded by the federal and state constitutions." *Id.* (citing *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)). To ensure that defendants in postconviction proceedings receive that reasonable level of assistance, Rule 651(c) requires postconviction counsel to file a certificate confirming that the attorney has consulted with the defendant, has reviewed the record of the case, and "has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Once counsel has filed a Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises. *Addison*, 2023 IL 127119, ¶ 21. The defendant then has the burden of showing that "postconviction counsel did not substantially comply with the strictures of the rule" or that "postconviction counsel did not make all necessary amendments to the *pro se* petition." *Id.* Importantly for the present case, "[t]his includes making amendments that are necessary to overcome procedural bars." *Id.* (citing *People v. Perkins*, 229 Ill. 2d 34, 44 (2007)). Indeed, "[a]n adequate or proper presentation of a petitioner's substantive claims necessarily includes attempting to overcome procedural bars *** that will result in dismissal of a petition if not rebutted." *Perkins*, 229 Ill. 2d at 44.

¶ 17 In its motion to dismiss, the State raised numerous procedural and technical defects in the defendant's *pro se* petition. The State, seemingly correctly, alleged that many of the defendant's claims were either procedurally barred, conclusory, unsupported by necessary argument, or unsupported by necessary affidavits or documentation. Yet, despite adopting the *pro se* petition in full, defendant's postconviction counsel in this case did not amend the defendant's *pro se* petition to address these shortcomings. He did not augment the conclusory allegations with any elaboration, did not add argument to the claims where it was missing, and did not attempt to explain how the claims that appear to be procedurally barred are in fact eligible for consideration.

While counsel's failure to provide affidavits might not amount to unreasonable assistance in this case in the absence of evidence suggesting that counsel did not attempt to obtain them (see *People v. Johnson*, 154 Ill. 2d 227, 241 (1993)), counsel's failure to make any attempt to remediate the numerous procedural and technical issues present in the defendant's *pro se* petition does. See *People v. Turner*, 187 Ill. 2d 406, 414 (1999) (holding that postconviction counsel's performance was unreasonable when counsel "failed to make a routine amendment to the post-conviction petition which would have overcome the procedural bar of waiver and elected to stand on a *pro se* petition, which omitted essential elements of petitioner's constitutional claims and contained virtually no evidentiary support"); *People v. Perkins*, 367 Ill. App. 3d 895, 900 (2006) ("We do not think that counsel has made an adequate presentation of a defendant's claims if he or she has not attempted to help the defendant avert dismissal for a reason other than the merits of the claim.")

¶ 18 The State argues that this case is similar to *People v. Bass*, 2018 IL App (1st) 152650, in which the defendant's petition was dismissed on the State's motion due to the absence of supporting affidavits. On appeal, the defendant in *Bass* argued that postconviction counsel rendered unreasonable assistance by failing to obtain the missing affidavits, failing to explain the affidavits' absence, or by failing to withdraw. *Id.* ¶ 10. This court affirmed the dismissal and found counsel's assistance to be reasonable. *Id.* ¶ 22. We noted that counsel had explained on the record on multiple occasions that he was attempting to obtain the missing affidavits, before ultimately informing the court that he was unable to get them. *Id.* ¶ 15. From the record, this court concluded that counsel had made reasonable efforts had met the Rule 651(c) standard of reasonable performance. *Id.* ¶ 16. But this case is not like *Bass*. While it is true that the defendant's postconviction counsel did state on the record at a scheduling hearing that "we have an

investigation ongoing," the issue in this case is not merely the absence of affidavits and a question of counsel's efforts to substantiate the defendant's claims. Rather, the failure here is counsel's decision not to amend the numerous procedural and technical deficiencies that the State identified in its motion to dismiss.

¶ 19 The State is correct that "[f]ulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf," *People v. Greer*, 212 Ill. 2d 192, 205 (2004), but there is no indication that counsel's failure to amend the *pro se* petition in this case was due to counsel's belief that the defendant's claims were frivolous. To the contrary, counsel expressly adopted all of the defendant's claims and affirmatively argued in favor of some of them at the hearing on the State's motion to dismiss. If counsel had deemed some of the claims to be frivolous, counsel could have simply declined to adopt those claims and could have instead adopted and amended only those claims that counsel believed to have potential merit. The adoption of the defendant's petition in full belies the State's argument on this point.

¶ 20 Finally, we note that, for reasons explained at length in *Addison*, it is not necessary for us to determine whether the defendant's claims had merit or whether they were in fact procedurally barred. See *Addison*, 2023 IL 127119, ¶¶ 33–42. When postconviction counsel fails to comply with Rule 651(c), "our case law dictates that the cause should be remanded without a consideration of whether the petition's claims have merit." *Id.* ¶ 33. This is because, fundamentally, it would be inappropriate to evaluate the merits of the defendant's claims when counsel has not fulfilled his duty of rounding them into their proper form. Indeed, consideration of the merits of the claims would require us to speculate as to what that final form might look

like. See *id.* ¶ 41. Accordingly, because counsel failed to fulfill his duties under Rule 651(c), we remand the cause to the circuit court for counsel to fully comply with the dictates of the rule.

¶ 21 For the foregoing reasons, we reverse the judgment of the circuit court dismissing the defendant's petition and remand with instructions for the court to appoint new counsel for the defendant and for second-stage proceedings to begin anew.

¶ 22    Reversed and remanded with instructions.