NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220749-U

NO. 4-22-0749

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 3, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| QMONI K. WHEELER, | ) | No. 15CF92 |
| Defendant-Appellant. | ) | |
| | ) | The Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The appellate court reversed and remanded because defendant's postconviction counsel failed to provide reasonable assistance.

¶ 2    Defendant, Qmoni K. Wheeler, appeals the second-stage dismissal of his postconviction petition. Defendant argues that postconviction counsel provided an unreasonable level of assistance because counsel failed to attach necessary affidavits or explain the absence of such affidavits in response to the State's motion to dismiss. We reverse and remand.

¶ 3                                I. BACKGROUND

¶ 4    In 2016, defendant was convicted of, among other things, home invasion and two counts of aggravated criminal sexual assault, and the trial court sentenced him to an aggregate sentence of 90 years in prison. In May 2019, this court affirmed defendant's sentence on direct appeal. Defendant's only argument was that his sentence was excessive. *People v. Wheeler*, 2019

IL App (4th) 160937, ¶ 1.

¶ 5          In December 2020, defendant *pro se* filed a petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), in which he alleged (1) that his trial counsel was ineffective for failing to investigate five alibi witnesses, whom defendant listed by name and (2) an excessive sentence claim. Defendant wrote in his petition that he could not obtain the witnesses' affidavits because (1) his incarceration prevented him from locating the witnesses and (2) COVID-19 restrictions prevented two witnesses from having their affidavits notarized. (Defendant claimed the affidavits existed but did not attach them to the petition.) The trial court appointed counsel and advanced defendant's petition to the second stage.

¶ 6          Later in December 2020, the State filed a motion to dismiss defendant's petition, arguing that (1) the petition was not supported by affidavits, (2) *res judicata* barred all sentencing claims because the appellate court affirmed defendant's sentence on direct appeal, and (3) the petition was untimely.

¶ 7          In February 2021, postconviction counsel filed a response to the State's motion, stating, "The focus of this motion is to request an evidentiary hearing to question actual subpoenaed witnesses chosen by [defendant] who will testify about his whereabouts at the time of the crime." Regarding the lack of affidavits, counsel asserted that defendant could not be penalized for his inability to obtain affidavits due to COVID-19-related shutdowns, which prevented defendant from accessing the law library and prevented witnesses from notarizing their statements. Counsel claimed, "These new facts pertaining to his innocence can only be demonstrated by having an evidentiary hearing where [defendant] and his counsel can question said witnesses under oath."

¶ 8          Postconviction counsel also blamed (1) trial counsel for not obtaining the affidavits or calling the witnesses at trial and (2) appellate counsel for failing to argue trial counsel's

ineffectiveness on direct appeal, which resulted in the claims being barred by *res judicata*. Regarding timeliness, counsel contended that defendant was raising an actual innocence claim based on his trial counsel's failure to present an alibi defense and actual innocence claims may be brought at any time.

¶ 9     In May 2021, the State filed an amended motion to dismiss in which it expanded upon its prior grounds for dismissal. Specifically, the State asserted that Illinois case law made clear that a postconviction petition cannot survive a second-stage motion to dismiss unless the defendant attaches affidavits from the alibi witnesses that set forth the testimony those witnesses would have provided. The State further argued that COVID-19 did not provide an excuse for failing to obtain affidavits because this court's opinion on direct appeal was released in May 2019 and COVID-19 lockdowns did not begin until mid-March 2020. Accordingly, the State asserted that the petition was untimely. The State also noted that defendant could not assert a valid actual innocence claim because he alleged he told his trial counsel about the alibi witnesses prior to trial, meaning the evidence was not "newly discovered."

¶ 10     The trial court docket sheet shows that, after the State's amended motion to dismiss, neither party filed anything over the next year. In April 2022, the State filed a notice of hearing on its motion to dismiss. Postconviction counsel requested time to file a response to the State's amended motion to dismiss.

¶ 11     In May 2022, postconviction counsel filed an "addendum to petition for postconviction relief," which counsel stated was supplementing defendant's response to the State's motion to dismiss. In the "addendum," counsel wrote that the purpose of the filing was to preserve defendant's proportionate penalties violation claim based on defendant's young age of 18 years and 5 months at the time of the offense and largely reiterated what defendant wrote in his *pro se*

petition. Postconviction counsel filed a certificate that (1) attested it was made in compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and (2) stated that counsel had consulted with defendant and made any necessary amendments to the petition to adequately present defendant's constitutional claims. However, counsel did not (1) amend the *pro se* petition, (2) attach supporting affidavits, or (3) explain the lack of affidavits.

¶ 12        In August 2022, the trial court conducted a hearing on the State's motion to dismiss. The State again argued the lack of affidavits was fatal and that actual innocence could not excuse the late filing because the alibi witnesses were known at the time of defendant's jury trial. Postconviction counsel argued that a third-stage evidentiary hearing was necessary to resolve defendant's ineffective assistance claims, which would allow postconviction counsel to subpoena witnesses and find out what their testimony would have been by presenting it at the evidentiary hearing. Counsel reiterated that COVID-19 prevented defendant from getting affidavits and trial counsel should have obtained those affidavits and presented the witnesses at trial. Counsel also informed the court that defendant stated he had sent to postconviction counsel an affidavit from one of the witnesses, which counsel would file once he received it so it could be considered at a third-stage hearing.

¶ 13        The trial court granted the State's motion to dismiss, explaining that the court agreed with the State that the petition (1) was untimely, (2) raised a sentencing claim barred by *res judicata*, and (3) failed to make a substantial showing of a constitutional violation because it was unsupported by affidavits or other evidence.

¶ 14        This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16        Defendant appeals, arguing that postconviction counsel failed to provide reasonable

assistance of counsel as required by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) because, among other things, counsel did not understand that supporting affidavits were required to survive dismissal and made no attempt to obtain them. We agree, reverse the trial court's dismissal order, and remand for further second-stage proceedings.

¶ 17                                    A. The Applicable Law

¶ 18          The Act provides a criminal defendant the means to redress substantial violations of his constitutional rights that occurred in his original trial or sentencing. 725 ILCS 5/122-1(a)(1) (West 2020). The Act contains a three-stage procedure for relief. *People v. Addison*, 2023 IL 127119, ¶ 18. Here, defendant's petition was dismissed at the second stage, while he was represented by counsel. See *id.*

¶ 19          Because the right to counsel in postconviction proceedings is purely statutory, the Illinois Supreme Court has held that defendants are entitled only to a "reasonable level of assistance," which is less than that afforded by the state and federal constitutions. *Id.* ¶ 38. Rule 651(c) outlines certain duties that postconviction counsel must perform in order to provide reasonable assistance. *Id.* Counsel must (1) consult with the defendant to determine the issues the defendant wants to raise, (2) examine the record of the proceedings in the trial court, and (3) make any amendment to the petition necessary to adequately preserve the defendant's contentions. *Id.* ¶ 20.

¶ 20          In this case, postconviction counsel filed a facially valid Rule 651(c) certificate, which creates a rebuttable presumption of reasonable assistance that defendant bears the burden of overcoming by showing a lack of compliance. *Id.* ¶ 21. A defendant may do so by, among other things, demonstrating that counsel failed to (1) make necessary amendments to the *pro se* petition (*id.*) or (2) understand that affidavits or supporting materials were required to survive dismissal

(*People v. Urzua*, 2023 IL 127789, ¶¶ 62-64).

¶ 21         In *Urzua*, the defendant filed *pro se* his postconviction petition claiming actual innocence, which included an unnotarized statement in support of his claim. *Id.* ¶ 61. The defendant's petition advanced to the second stage of proceedings, and retained counsel adopted the *pro se* petition. *Id.* ¶ 64. However, counsel did not amend the petition; instead, the record showed that counsel believed that the "unnotarized statement, verified by certification pursuant to section 1-109 of the Code [of Civil Procedure (735 ILCS 5/1-109 (West 2020))] and attached to the postconviction petition, was sufficient to advance the petition and survive a second-stage dismissal." *Id.* ¶ 63. Specifically, retained counsel erroneously argued in response to the State's motion to dismiss that the petition "was not required to have the 'affidavit' notarized because it was a factual question to be resolved at a third-stage evidentiary hearing." *Id.*

¶ 22         The supreme court noted that although counsel filed a facially valid Rule 651(c) certificate of reasonable assistance, that certificate was belied by counsel's (1) "failure to amend the petition or the attached unnotarized statement and [(2)] *** misstatement of the Act's affidavit requirements." *Id.* ¶ 64. Accordingly, the supreme court concluded that counsel did not render reasonable assistance and reversed the trial court's second-stage dismissal, remanding the case for further proceedings with new postconviction counsel. *Id.* ¶ 65.

¶ 23                          B. This Case

¶ 24         After reviewing the record in this case, it is clear postconviction counsel, like the counsel in *Urzua*, demonstrated a fundamental misunderstanding of his obligations under the Act and Rule 651(c) and did not provide reasonable assistance. The record as a whole suggests that counsel did not appreciate the requirements to survive the second stage. Although the record suggests that counsel labored under multiple misunderstandings, the clearest indication is that

postconviction counsel did not understand that he needed to obtain affidavits from the alibi witnesses for defendant's petition to proceed to a third-stage hearing.

¶ 25     For example, in his response to the State's motion to dismiss, counsel argued, "The focus of this motion is to request an evidentiary hearing to question actual subpoenaed witnesses chosen by [defendant] who will testify about his whereabouts at the time of the crime." Counsel asserted, "These new facts pertaining to his innocence can only be demonstrated by having an evidentiary hearing where [defendant] and his counsel can question said witnesses under oath."

¶ 26     Counsel also wrote in his response to the motion to dismiss:

"If [defendant's] trial lawyer had subpoenaed these individuals to testify or at least in an attempt to receive these sworn affidavits, then there could have been up to five additional affidavits attached to his Petition backing his argument of being in another location at the time of the crime. Without a hearing it cannot be determined if this prospective witness testimony regarding [defendant's] whereabouts on the day in question of the crime committed is factually accurate or factually false. This supports the argument of ineffective assistance of counsel violating his Sixth Amendment rights and promoting the argument that an evidentiary hearing is indeed necessitated for a retrial or resentencing."

¶ 27     At the motion to dismiss hearing, after the State informed the trial court that witness affidavits were required to survive the second stage, counsel argued as follows:

"[Defendant] told his attorney that he was with Kendall Dennis and Donnie Bailey at McDonald's during the time this incident occurred. Trial counsel as well as appellate counsel failed to reach out to these exculpatory witnesses. My client informed me that he sent me an affidavit from Kendall Dennis affirming this

information but did not receive it but if this reaches a third stage hopefully I will receive it and we'll file it by that court date."

¶ 28 Later at that hearing, counsel argued that any waiver or procedural forfeiture should be excused in the interests of justice, and "a just result here would be to allow the petition to be [unintelligible] based on its merits and have an evidentiary hearing where I can actually call and subpoena witnesses to the stand."

¶ 29 These portions of the record demonstrate that, despite the State's repeatedly arguing that defendant's petition was fatally flawed without affidavits from his claimed alibi witnesses, counsel asked the trial court to order a third-stage evidentiary hearing so counsel could subpoena the witnesses and learn their testimony. Postconviction counsel explained at length why trial counsel was ineffective for failing to investigate the witnesses and obtain affidavits and why defendant made reasonable efforts to obtain affidavits but was thwarted by COVID-19 lockdowns. Postconviction counsel argued that these excuses were sufficient to justify a third-stage hearing, but, as the State argued, counsel had 18 months after his appointment to investigate and contact the witnesses to obtain their affidavits and was required to attach them to survive the motion to dismiss.

¶ 30 It appears postconviction counsel believed he needed the ability to subpoena the witnesses to investigate their testimony. If this was true, the Act permits—indeed, requires— counsel to explain why the evidence could not be obtained and what he believed that evidence would be. 725 ILCS 5/122-2 (West 2020); see *People v. Delton*, 227 Ill. 2d 247, 255 (2008) (stating failure to attach such evidentiary support or explain its absence is fatal to a postconviction petition); *People v. Clark*, 2023 IL App (3d) 210344-U, ¶ 18.

¶ 31 Here, counsel (1) gave no indication that he ever attempted to secure affidavits from

the witnesses named in the *pro se* petition and (2) never explained why the affidavits were not attached. The absence of this information is troubling because experience shows that postconviction counsel routinely, if not always, tells the trial court whether counsel has been able to locate or speak with key witnesses. Instead, counsel in this case consistently argued to the trial court that an evidentiary hearing was required for counsel to subpoena witnesses and learn their testimony. As the supreme court said in *Urzua*, where counsel similarly argued that witness testimony was a factual matter for the third stage, "Counsel's argument was wrong." *Urzua*, 2023 IL 127789, ¶ 63.

¶ 32 In its supplemental brief, the State argues that the present case is distinguishable from *Urzua* because the State here preserved its argument that defendant was not prejudiced by postconviction counsel's actions, whereas, in *Urzua*, the supreme court declined to address prejudice because the State forfeited the argument. *Id.* ¶ 67. However, as defendant points out, the supreme court in *Addison* rejected the State's argument that a showing of prejudice was required and instead reaffirmed that "when appointed counsel does not adequately fulfill his or her duties under Rule 651(c), a remand is required regardless of whether the petition's claims have merit." *Addison*, 2023 IL 127119, ¶ 42 (citing *People v. Suarez*, 224 Ill. 2d 37, 47-49 (2007)).

¶ 33 Accordingly, we conclude that defendant has made a sufficient showing that postconviction counsel failed to comply with Rule 651(c), rebutting the facially valid certificate, reverse the trial court's dismissal of the *pro se* petition, and remand for further second-stage proceedings.

¶ 34 We further note that the trial court appointed a private attorney to represent defendant in the postconviction proceedings, and defendant requests we instruct the trial court to appoint new counsel on remand. Because the trial court did not appoint the public defender's

office, which would be able to make an independent determination of whether to reassign defendant's case to another attorney in that same office, we grant defendant's request for new counsel. We make clear that the trial court is not required to appoint the public defender's office and defendant is entitled to only one appointed attorney under the Act. Given that appointed counsel demonstrated a fundamental misunderstanding of his obligations under Rule 651(c), we conclude defendant's request for a new attorney is reasonable under the circumstances.

¶ 35                                III. CONCLUSION

¶ 36        For the reasons stated, we reverse the trial court's judgment and remand for further second-stage proceedings.

¶ 37        Reversed and remanded.