2024 IL App (1st) 230247-U

No. 1-23-0247

Order filed April 17, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 17050 |
| | ) | |
| CHARLES PRITCHERD, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Petitioner-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's judgment dismissing petitioner's petition for postconviction relief at the second stage for failing to make a substantial showing of a constitutional violation is affirmed.

¶ 2    Petitioner Charles Pritcherd appeals the second-stage dismissal of his petition for postconviction relief pursuant to the Post-Conviction Hearing Act (the Act), 725 ILCS 5/122-1 *et seq.* (West 2012). The trial court held that petitioner failed to make a substantial showing of a

constitutional violation. He now contends that we should reverse the judgment of the trial court because he did not receive the reasonable assistance of counsel.

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                I. BACKGROUND

¶ 5    On October 1, 2009, following a bench trial, petitioner Charles Pritcherd was convicted of attempted first degree murder, attempted armed robbery, and being an armed habitual criminal. Petitioner was sentenced to concurrent prison terms of 35, 15, and 20 years respectively.

¶ 6    The trial testimony established that on August 25, 2008, at about 2:50 p.m., petitioner and another man, Kendrick King, entered a store run by Naeil and Kalil Elhaj.[2] Petitioner walked to the back of the store and opened one of the refrigerators while King walked to the registers. Naeil, who was suspicious of both men, confronted petitioner. In response, petitioner drew a gun, pointed it at Naeil's head, and announced a robbery. Petitioner then pointed the gun at Naeil's stomach and pulled the trigger. Naeil heard a pop and smelled smoke, but the gun did not fire.

¶ 7    Naeil and petitioner struggled for the gun, during which the gun fired two more times. Neither shot hit Naeil. During this struggle, King jumped over the counter to try to rob the register. Kalil retrieved a knife from underneath the counter, ran to petitioner, and stabbed him in the back. The impact broke the blade from the grip.

¶ 8    Petitioner and King fled the store, entered a red minivan, and drove away. Delores Mina, the owner of a business across the street, saw part of the van's license plate. Police responded to the nearest hospital and found a red minivan with a license plate consistent with what Mina saw.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2] Because they share a last name, the two victims are hereafter referred to by their first names.

The van was registered to Tamika Thomas, petitioner's girlfriend, who let petitioner borrow the van earlier that day.

¶ 9 Thomas revealed that petitioner returned home at about 4 p.m. the same day as the attempted robbery with blood on his shirt and shoe and he told Thomas he had been stabbed and shot. Thomas attempted to clean the wound on petitioner's back, but she believed a wound on his foot required medical attention and she drove him to the hospital in her red minivan. When shown a picture of King, Thomas identified him by his nickname, "Bear," because she did not know his real name.

¶ 10 Officers recovered a single bullet at the store that had pierced a bottle of bleach. The bullet from the second gunshot and the gun itself were never found. Kalil identified petitioner from a photo array, but Naeil could not identify anyone because his glasses were knocked off during the incident. During opening statements and closing arguments, the State argued that petitioner's wound in his foot was the result of petitioner shooting himself in the foot during the struggle for the gun.

¶ 11 Following petitioner's conviction, we affirmed on direct appeal. *People v. Pritcherd*, 2011 IL App (1st) 102169-U (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 12 On May 5, 2012, petitioner filed a *pro se* petition for postconviction relief. Among other claims, petitioner asserted that he received ineffective assistance of counsel because "petitioner showed [trial counsel] his feet to dispel the State's repetitious remarks that the defendant shot himself in the foot while trying to kill Naeil Elhaj. Counsel could have offered medical charts to refute those claims." Petitioner did not specify what records or what they would have shown.

¶ 13    The trial court docketed the petition and appointed postconviction counsel. On June 28, 2021, postconviction counsel filed a "supplemental exhibit" to the *pro se* petition, which was an affidavit from petitioner which read, "I, Charles Pritcherd, being first duly sworn, state that I have read the foregoing petition and that the contents contained therein are true and accurate to the best of my knowledge, information and belief." Counsel also filed a Supreme Court Rule 651(c) (eff. July 1, 2017) certificate the same day. That certificate stated that counsel had consulted with petitioner about his claims, examined the trial record and trial counsel's file, and submitted the supplemental exhibit because it was "necessary for an adequate presentation of petitioner's contentions." Counsel did not file an amended postconviction petition.

¶ 14    On June 14, 2022, the State moved to dismiss the petition. With respect to petitioner's claim that trial counsel failed to present medical evidence regarding his foot, the State noted that the petition contained no medical records as exhibits, thus there was no way to determine whether that evidence could have changed the outcome. At a hearing on December 15, 2022, postconviction counsel stated that she spoke to petitioner, and that he could not provide her with any additional information about his claims, nor did petitioner provide any additional information to prior counsel. The trial court dismissed the petition on December 27, 2022, for failing to make a substantial showing of a constitutional violation and this appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    Petitioner raises only one argument on appeal: that he was denied the reasonable assistance of counsel under Rule 651(c) where counsel failed to amend the petition to include factual details about his medical treatment and failed to obtain and attach petitioner's medical records regarding his foot.

¶ 17    The Act provides a mechanism by which a petitioner may raise a collateral attack against his or her conviction based on a claim of actual innocence or where there was a substantial denial of his or her rights under the Constitution of the United States, the State of Illinois, or both. 725 ILCS 5/122-1 *et seq*. (West 2012). The purpose of postconviction proceedings is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on appeal. *People v. Buffer*, 2019 IL 122327, ¶ 12.

¶ 18    The Act sets out a three-stage process for the adjudication of postconviction petitions. *Id*. at ¶ 45. If the trial court does not dismiss the petition as frivolous or patently without merit at the first stage, the petition advances to the second stage. *People v. Edwards*, 197 Ill. 2d 239, 245 (2001). Counsel is appointed to represent the defendant, if necessary, and the State is permitted to file responsive pleadings. *Edwards*, 197 Ill. 2d at 245; 725 ILCS 5/122-4 (West 2012); 725 ILCS 5/122-5 (West 2012). At the second stage, the trial court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Edwards*, 197 Ill. 2d at 246. All well-pleaded facts not positively rebutted by the trial record are construed as true. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 19    In postconviction cases, there is no constitutional right to counsel. *People v. Addison*, 2023 IL 127119, ¶ 19. Instead, the right to counsel is provided by statute, and petitioners are only entitled to a "reasonable level of assistance," which is less than that afforded by the federal and state constitutions. *Id*. This distinction is a rational one because trial counsel plays a different role than postconviction counsel. *Id*. At trial, counsel acts as a shield to protect the accused from being stripped of the presumption of innocence. *Id*. But petitioners in a postconviction posture have already been stripped of their presumption of innocence and have generally failed to obtain relief

on direct appeal. *Id*. Thus, postconviction counsel is meant not to protect a petitioner from the prosecutorial forces of the State, but to shape petitioners' claims into the proper legal form and present those claims to the court. *Id*.

¶ 20    The Act contemplates that the attorney appointed to represent an indigent petitioner would consult with him either by mail or in person, ascertain his alleged grievances, examine the record of the proceedings at trial, and then amend the *pro se* petition so that it would adequately present the petitioner's constitutional claims. *People v. Owens*, 139 Ill. 2d 351, 358-59 (1990). The Act cannot serve its purpose properly unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form and presents them to the court. *Id*. at 359.

¶ 21    To ensure that individuals receive reasonable assistance of counsel, Rule 651(c) provides:

"The record filed in that court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 22    Compliance with Rule 651(c) is mandatory, but once postconviction counsel files a Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises. *Addison*, 2023 IL 127119, ¶ 21. The petitioner bears the burden of overcoming that presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule. *Id*. A petitioner may do so by, among other things, demonstrating that postconviction counsel did not make all the

necessary amendments to the *pro se* petition. *Id.* We review the dismissal of a second-stage petition, and issues concerning the interpretation of a supreme court rule, *de novo*, affording no deference to the trial court. *Id.* ¶ 17.

¶ 23    Here, postconviction counsel filed a certificate that complied with the requirements of Rule 651(c), thus creating the rebuttable presumption that she provided reasonable assistance to petitioner. *Id.* ¶ 21. However, petitioner claims that the record rebuts this presumption because postconviction counsel did not attach any medical records, nor did she amend the petition to include allegations of what those medical records would have shown.

¶ 24    There are instances where the record affirmatively demonstrates that postconviction counsel did not attempt to locate the evidence necessary for a claim, such as in *People v. Johnson*. There, the *pro se* petition identified three witnesses that would have supported an ineffective assistance of trial counsel claim. *People v. Johnson*, 154 Ill. 2d 227, 242 (1993). At the hearing on the State's motion to dismiss, and through an affidavit, postconviction counsel admitted that he did not contact or interview those witnesses. *Id.* at 242-43. As part of its reasoning for its conclusion that postconviction counsel did not provide reasonable assistance, the supreme court stated that postconviction counsel had an obligation to attempt to obtain evidentiary support for the petition. *Id.* at 245, 250.

¶ 25    But those are not the circumstances before us in this case, as the record does not affirmatively show that postconviction counsel did not attempt to obtain petitioner's records. Petitioner's complaint, instead, is that postconviction counsel did not use his medical records. However, this argument is circular because it requires us to first assume that there existed useful allegations to include and helpful medical records to attach. Petitioner claimed he unsuccessfully

attempted to obtain his medical records, and the record gives us no indication of what these medical records would show. The *pro se* petition contains no allegations of what records of petitioner's medical treatment would have shown or how his medical treatment would refute the State's theory that the missing bullet ended up in petitioner's foot—even though petitioner was obviously present for his own medical treatment. For postconviction counsel to provide unreasonable assistance of counsel for failing to make necessary amendments, there must first be amendments that are necessary to make. Petitioner's argument begs the question by assuming that the lack of amendments to the petition was due to some deficiency in postconviction counsel's performance rather than an inability to substantiate petitioner's claims. *See People v. Bass*, 2018 IL App (1st) 152650, ¶ 16 (noting that not every petition can be amended such that it states a substantial constitutional claim).

¶ 26    As support for his argument, petitioner asserts that postconviction counsel "did not explain her efforts in locating the documents" and "never indicated whether she made any attempts to obtain the records, whether she spoke to trial counsel about them, or whether the trial file contained or referenced them." But Rule 651(c) does not require postconviction counsel to document these things, nor could we reasonably expect postconviction counsel to report her findings in open court if those findings did not aid petitioner's claims. Petitioner also does not dispute that postconviction counsel complied with her duty to consult with him about his claims. We can only presume that what she learned from petitioner during that consultation did not warrant making any additional allegations or attaching medical records.

¶ 27    Petitioner likens this case to *People v. Turner*, where postconviction counsel failed to amend the petitioner's *pro se* petition to include allegations of ineffective assistance of appellate

counsel to avoid waiver of an ineffective assistance of trial counsel claim, and failed to attach any affidavits, including one from the petitioner himself. *People v. Turner*, 187 Ill. 2d 406, 413-14 (1999). It must also be noted that postconviction counsel in *Turner* included an exhibit containing pages from the trial transcript which "had the effect of utterly refuting counsel's answer to the State's waiver argument," and demonstrated a fundamental misunderstanding of the law by claiming that the petitioner was entitled to an evidentiary hearing merely because he had alleged violations of constitutional rights. *Id.* at 414-15.

¶ 28 Here, the issue is not one of postconviction counsel failing to include allegations that would have overcome a procedural bar. Including an allegation of ineffective assistance of appellate counsel to avoid waiver is not something that is dependent upon evidence outside the record that may or may not exist. As we have already noted, not every claim can be amended to make a substantial showing of a constitutional violation. The mere fact that postconviction counsel did not allege facts that would have provided support for the claim is not evidence of unreasonable assistance unless we assume those facts exist.

¶ 29 Likewise, failing to include an affidavit from one's own client that only mirrors the allegations that client already made in his own *pro se* petition is not the same as failing to attach medical records that may or may not contain useful information. Furthermore, as we noted above, postconviction counsel's unreasonable assistance in *Turner* was the product of multiple different errors that went well beyond what petitioner alleges in the instant case. *Id.* at 413-15.

¶ 30 Petitioner correctly notes that we may not consider the merits of his petition here. *Addison*, 2023 IL 127119, ¶ 33. "[W]hen postconviction counsel does not fulfill his or her duties under Rule 651(c), remand is required 'regardless of whether the claims raised in the petition had merit.' "

*Addison*, 2023 IL 127119, ¶ 33 (quoting *People v. Suarez*, 224 Ill. 2d 37, 47 (2007)). But considering whether petitioner's underlying claims have merit is different from whether the record affirmatively rebuts the presumption that postconviction counsel provided reasonable assistance. The record before us gives no indication of what information postconviction counsel should have or could have appended to the petition, nor does the record affirmatively indicate that postconviction counsel did not investigate this issue. In effect, petitioner's argument requires us to assume his claims have merit by assuming there were helpful amendments to be made to his petition. Without anything to rebut the presumption created by the Rule 651(c) certificate, we do not find postconviction counsel's performance was unreasonable.

¶ 31                                  III. CONCLUSION

¶ 32    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 33    Affirmed.