2024 IL App (1st) 182727-U

No. 1-18-2727

Order filed July 15, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 13668 |
| | ) | |
| RONALD BATTLE, | ) | Honorable |
| | ) | Allen F. Murphy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The private attorney who represented defendant at the hearing on the State's motion to dismiss his supplemental postconviction petition was not required to comply with Supreme Court Rule 651(c) (eff. July 1, 2017), because defendant's initial postconviction counsel already had. Pursuant to *People v. Addison*, 2023 IL 127119, we remand the cause for additional postconviction proceedings.

¶ 2   In 2007 and 2008, defendant Ronald Battle filed *pro se* petitions for relief pursuant to the Post-Conviction Heating Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006, 2008)), and the Code of Civil Procedure (725 ILCS 5/2-1401 (West 2008)). The petitions were docketed and

consolidated, and postconviction counsel was appointed. Postconviction counsel filed a supplemental petition, which was ultimately dismissed on the State's motion. On appeal, defendant argued (1) the case should be remanded for further proceedings when the private attorney who represented him at the hearing on the State's motion to dismiss filed a facially invalid certificate pursuant to Supreme Court Rule 651(c) (eff. July 1, 2017), and (2) he was denied the reasonable assistance of postconviction counsel when none of his postconviction attorneys amended his *pro se* filings to overcome procedural bars. We affirmed. See *People v. Battle*, 2021 IL App (1st) 182727-U.

¶ 3 Defendant filed a petition for leave to appeal. Our supreme court denied defendant's petition, but ordered us to vacate our judgment and consider the effect of its decision in *People v. Addison*, 2023 IL 127119, on the issue of whether defendant received reasonable assistance from postconviction counsel. See *People v. Battle*, No. 127782 (Sept. 27, 2023) (supervisory order). We allowed the parties to file supplemental briefing responding to the supervisory order. For the following reasons, we reverse the dismissal of the supplemental postconviction petition and remand the cause for further proceedings pursuant to the Act.

¶ 4 Following a jury trial, defendant was found guilty of first degree murder and armed robbery arising from the May 29, 2003, shooting death of James Johns in a jewelry store. We relate only the facts relevant to the instant appeal.

¶ 5 Prior to trial, defendant filed a motion to suppress, alleging that his inculpatory statement was coerced when detectives threatened to charge defendant's family members, claimed to have arrested his mother and girlfriend, and showed him documents memorializing "the alleged arrests."

¶ 6    At the hearing on the motion, Calumet City police officer Donald Joswiak and detective Kevin Rapacz denied telling defendant that his family members would be charged if he did not make a statement, making any "material misrepresentations" to him, or using psychological or physical coercion in order to obtain a statement. The trial court denied the motion.

¶ 7    Defendant also filed a motion *in limine* to present testimony from his mother, Yvonne Key, and girlfriend, Catrina Hines, that his cousin, Donnell Coleman, admitted committing the offenses.

¶ 8    At the hearing on the motion, trial counsel represented to the trial court that Key and Hines would testify that on the one-year anniversary of the shooting, Coleman began to cry, and stated that he was responsible for the murder and felt "bad about it." Hines would further state that Coleman said his girlfriend was pregnant at the time of the shooting and he needed money. Trial counsel acknowledged that Coleman, who had been interviewed by the State and the defense, denied committing the offenses, but argued that Coleman would not admit to the offenses and that defendant was entitled to present a defense.

¶ 9    The trial court denied the motion, finding that the out-of-court statement was not made under circumstances that provided a "considerable assurance of reliability."[1]

¶ 10    At defendant's jury trial, Irene Sanchez testified that, when she arrived at the jewelry store on May 29, 2003, defendant, rather than Johns, was behind the counter. Defendant exited the store carrying a garbage bag that subsequently broke, causing jewelry and boxes to fall to the ground. Defendant retrieved some items and fled. Sanchez later gave police a description of defendant and

---

[1] The court later clarified that, "the statement made by the mother was unreliable, not the statement made by the declarant."

his vehicle, and a computer sketch was created. On June 5, 2003, Sanchez identified defendant in a lineup.

¶ 11    Additional evidence established that Johns was discovered on the floor of store with a gunshot wound to the head.

¶ 12    Tommy Lee Johnson testified that on June 4, 2003, defendant visited his home and asked him to "get rid" of some jewelry, and that he sold several pieces and gave defendant the money.

¶ 13    Following defendant's arrest, he made a videotaped statement, stating, that he went to the jewelry store to rob it because he owed money to a drug dealer. Defendant looked at rings and then drew a firearm and told Johns not to move. When Johns reached under a shelf, defendant shot him. Defendant filled a garbage bag with jewelry. As he left the store, he passed a woman. Later, he gave Johnson rings to sell on his behalf. He denied being threatened or coerced into making the statement.

¶ 14    Before the State rested, the parties stipulated that six phone calls were made to defendant's home on May 29, 2003, between 8:49 a.m. and 11:21 a.m. Three phone calls lasted zero seconds and three phone calls lasted more than zero seconds. A zero-second call meant no one answered the phone.

¶ 15    Outside the presence of the jury, the parties argued as to the admissibility of Coleman's alleged statement to Key and Hines. Coleman's attorney, who was present, told the court that his client would deny making any statement admitting involvement. Trial counsel then argued that Coleman's statement was admissible pursuant to *Chambers v. Mississippi*, 410 U.S. 284 (1973), and was crucial to defendant's theory of the case.

¶ 16    The State responded that Coleman's proposed testimony would allow the defense to "get it out there that [Coleman] supposedly confessed to this murder," and that Key's and Hines's testimony on this issue—which the court already found unreliable—would confuse the jury. The trial court then placed Coleman under oath and requested an offer of proof as to his potential testimony.

¶ 17    Coleman testified that he did not remember the evening of May 14, 2004, and denied telling Key and Hines that he committed "the murder." The trial court found that Coleman's testimony would serve "no purpose," and therefore barred it.

¶ 18    Defendant testified that on the morning of May 29, 2003, he was at home on the phone with his friend Amelia Jones when Coleman arrived and asked to borrow defendant's vehicle.[2] After Coleman left, defendant spoke to Jones again and had a brief call with Key. When Coleman returned with a white garbage bag filled with jewelry, defendant assumed the jewelry was stolen. Defendant only gave the videotaped statement because the police threatened to arrest his family members. Defendant denied shooting Johns and, to defendant's "knowledge," Coleman shot Johns. Defendant identified photographs of Coleman at trial.

¶ 19    The jury found defendant guilty of first degree murder and armed robbery and that, during the commission of these offenses, defendant personally discharged a firearm. After a hearing, the trial court sentenced defendant to consecutive terms of 75 years for first degree murder and 20 years for armed robbery.

¶ 20    On direct appeal, we modified defendant's sentences to run concurrently. See *People v. Battle*, 378 Ill. App. 3d 817 (2008). Defendant filed a petition for leave to appeal. Our supreme

---

[2] In the transcript, defendant identified Amelia's family name as both Jones and Johnson.

court denied the petition for leave to appeal, but issued a supervisory order directing us to vacate our judgment and reconsider the case in light of *People v. Smith*, 233 Ill. 2d 1 (2009). See *People v. Battle*, No. 106105 (May 28, 2009) (supervisory order). We thereafter affirmed defendant's conviction for murder and vacated his conviction for armed robbery. See *People v Battle*, 393 Ill. App. 3d 302 (2009).

¶ 21    While his direct appeal was pending, defendant filed a *pro se* postconviction petition alleging, relevant here, that he was prevented from presenting a defense and identifying the " 'true offender.' " The circuit court summarily dismissed the petition for lack of jurisdiction. On appeal, we granted the parties' agreed motion for summary disposition and directed the petition be docketed for further proceedings under the Act. *People v. Battle*, No. 1-07-1264 (May 22, 2009) (dispositional order).

¶ 22    On January 2, 2008, defendant filed a *pro se* petition for relief from judgment under section 2-1401, alleging in pertinent part, that Coleman was the true offender, and that on February 21, 2004, Coleman confessed to defendant's mother and stated he "felt sorry" that defendant was incarcerated because of Coleman's actions.

¶ 23    On August 11, 2008, defendant filed a *pro se* postconviction petition raising numerous claims of ineffective assistance of trial and appellate counsel including, relevant here, that defendant was denied effective assistance on direct appeal by appellate counsel's failure to challenge trial counsel's effectiveness.

¶ 24    Attached to the petition were the affidavits of defendant and Key. Defendant averred that he had unsuccessfully tried to obtain documents, phone records, and police reports from trial counsel to support his claims. Key averred, relevant here, that in February 2004, her nephew cried

and told her that it was his fault that defendant was "locked up" and that she was not permitted to mention her nephew's name at trial.[3]

¶ 25    On October 29, 2008, the circuit court docketed defendant's *pro se* petitions for postconviction and postjudgment relief and appointed counsel. On June 9, 2009, the State read this court's order directing the clerk to docket the 2007 *pro se* postconviction petition into the record.

¶ 26    On January 15, 2016, postconviction counsel filed a supplemental postconviction petition and a certificate pursuant to Supreme Court Rule 651(c) (eff. Feb. 6, 2013). In the certificate, counsel stated that he consulted with defendant by mail, phone, and in person to ascertain defendant's contentions, obtained and read the trial transcripts, and prepared a supplemental postconviction petition which "augment[ed] the concerns already expressed" in defendant's *pro se* petition.

¶ 27    The supplemental petition alleged, in pertinent part, that defendant's conviction resulted from a denial of due process when he was identified through a "result oriented process" designed to ensure that he was identified as the offender when in fact the sketch generated from Sanchez's interview resembled Coleman rather than defendant and defendant's statement was "at odds" with the physical evidence. The petition next alleged that the trial court denied defendant the opportunity to present a defense when it barred evidence that Coleman "confessed" and raised a free-standing claim of actual innocence based upon Coleman's confession to Key and Hines. The petition next argued that defendant was denied the effective assistance when trial counsel failed to

---

[3] While Key's affidavit did not identify her nephew by name, we assume that the nephew in question is Coleman, as Kay averred, in one of the affidavits attached to the supplemental postconviction petition, that Coleman was her sister's son.

challenge Sanchez's pretrial identification of defendant as suggestive, and appellate counsel failed to challenge the suggestive identification on direct appeal.

¶ 28    Attached to the petition were police reports, a sketch generated from Sanchez's description, and three affidavits from Key.

¶ 29    Key averred, in pertinent part, that Coleman told her he knew that defendant did not commit "the robbery and murder." Specifically, a month after defendant was arrested, Key was in a vehicle with Hines and Coleman when Coleman stated that he knew it would "not be like [defendant] to do something like that." When she asked Coleman how he knew defendant did not commit the offense, Coleman said he was sorry. When Key told trial counsel about the conversation, he said he would have someone talk to Coleman.

¶ 30    The State filed a motion to dismiss alleging, relevant here, that the legal and factual arguments surrounding Coleman's alleged confession were "litigated to death" during pretrial and trial proceedings, were contained in the record, and should have been raised on direct appeal.

¶ 31    Defendant filed a response which asserted, relevant there, that the claim that the trial court erred when it did not allow defendant to present evidence that Coleman stated that he committed the offense was not waived, because it could not have been raised on direct appeal. The response noted that the record on direct appeal did not contain a photograph of Coleman, whereas the record in the postconviction proceeding did. Therefore, because the photograph was not contained in the record on direct appeal, appellate counsel "did not have the opportunity" to argue that the sketch prepared after Sanchez was interviewed resembled Coleman. In other words, absent this photograph, one of *Chambers* factors, whether an out-of-court statement was corroborated by other

evidence, was not met on direct appeal, and therefore the argument could not have been raised.[4] The response reiterated that the trial court's failure to permit testimony from Key, Hines, and Coleman denied defendant due process.

¶ 32    Postconviction counsel passed away on January 31, 2017, and substitute postconviction counsel was assigned. On March 17, 2017, substitute postconviction counsel acknowledged that the case was set for argument and asked the court to approve certain discovery. The State objected because a motion to dismiss and response had already been filed. The State further stated that discovery had been tendered and a Rule 651(c) certificate had been filed. The circuit court ordered substitute postconviction counsel to brief the discovery issue.

¶ 33    At a subsequent hearing, substitute postconviction counsel told the court that defendant instructed her to withdraw the discovery issue, review the transcript, and set the case for argument. She further stated she would file a Rule 651(c) certificate after reviewing the transcript.

¶ 34    On April 20, 2018, private postconviction counsel entered her appearance and substitute postconviction counsel was granted leave to withdraw.

¶ 35    On July 20, 2018, private postconviction counsel filed a Rule 651(c) certificate stating that she consulted with defendant by phone, mail, electronic means, or in person to ascertain his constitutional deprivations, and examined the trial proceedings. Private postconviction counsel acknowledged that she was defendant's third postconviction attorney and that defendant instructed her to respond to the State's motion to dismiss based upon the supplemental postconviction petition filed by initial postconviction counsel. The court then heard arguments on the motion to dismiss.

---

[4] In his opening brief before this court, defendant notes that this assertion was actually incorrect, as defendant identified photographs of Coleman at trial.

¶ 36     On September 21, 2018, the circuit court granted the State's motion to dismiss. The court noted, relevant here, that defendant raised a claim of actual innocence based upon defendant's assertion that Coleman was the "actual killer." The court characterized the claim as "like" a claim that defendant was not proven guilty beyond a reasonable doubt, and found the claim refuted by the record when defendant was identified by Sanchez and gave an inculpatory statement, Additionally, "[t]his matter could have been raised on appeal." The court then addressed defendant's claim that appellate counsel "should have raised these issues in his original appeal" and determined that defendant did not establish that the failure to do so was objectively unreasonable.

¶ 37     Before this court, defendant does not challenge the dismissal of his petition on the merits. Rather, he contends that remand is warranted because private postconviction counsel failed to comply with the requirements of Rule 651(c), and he was denied the reasonable assistance of postconviction counsel. Defendant has therefore forfeited for review any substantive claim challenging the dismissal of the petition on the merits. *People v. Cotto*, 2016 IL 119006, ¶ 49.

¶ 38     On appeal, defendant first contends that the cause must be remanded for further proceedings under the Act because the Rule 651(c) certificate filed by private postconviction counsel was facially invalid. Defendant argues that private postconviction counsel's certificate did not state that she made any amendments to defendant's *pro se* petition necessary for an adequate presentation of his contentions of constitutional deprivation as required by the rule.

¶ 39     Our supreme court has held there is "no constitutional right to counsel, effective or otherwise," in postconviction proceedings. *People v. Custer*, 2019 IL 123339, ¶ 30. Rather, the right to counsel recognized by the Act is a matter of legislative grace. *Id.* A defendant in a

postconviction proceeding is only entitled to the level of assistance required by the Act. *Id*. This "required quantum of assistance has been judicially deemed to be a 'reasonable level,' a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Id*. (quoting *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006)).

¶ 40    Pursuant to Rule 651(c), postconviction counsel must make a showing that: counsel consulted with the defendant either in person or by phone, mail, or electronic means to ascertain the defendant's alleged deprivation of constitutional rights; examined the record of the trial proceedings; and made any necessary amendments to the *pro se* petition for an adequate presentation of the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Counsel may make this showing by filing a certificate with the court. *Id.* The filing of a Rule 651(c) certificate gives rise to a rebuttal presumption that postconviction counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. Compliance with the rule "ensure[s] that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court." *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). We review an attorney's compliance with Rule 651(c) *de novo*. *Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 41    In the case at bar, defendant does not dispute that his initial postconviction counsel filed a Rule 651(c) certificate or that private postconviction counsel was his third postconviction attorney. Rather, he argues that private postconviction counsel was herself required to comply with Rule 651(c)'s requirements and that her failure to do so requires remand for further proceedings under the Act. We disagree.

¶ 42    In *People v. Smith*, 2022 IL 126940, the defendant appealed the second-stage dismissal of his postconviction petition. *Id.* ¶¶ 1, 8. The defendant sought remand for additional proceedings

under the Act because the attorney who represented him at the hearing on the State's motion to dismiss was not the same attorney who filed a Rule 651(c) certificate. *Id.* ¶¶ 1, 6, 8-9.

¶ 43    There, the defendant's *pro se* postconviction petition was docketed and initial postconviction counsel was appointed. *Id.* ¶ 6. Initial postconviction counsel thereafter filed a Rule 651(c) certificate representing that she complied with the rule and that a supplemental petition was unnecessary for the presentation of the defendant's claims. *Id.* The State filed a motion to dismiss, and initial postconviction counsel filed a response. *Id.* ¶¶ 7-8. Initial postconviction counsel was then replaced by second postconviction counsel, who represented the defendant at the hearing on the State's motion to dismiss. *Id.* ¶ 8. The circuit court granted the motion to dismiss and the defendant appealed. *Id.* Thus, the issue before our supreme court was whether every attorney who represented a defendant at the second stage of proceedings under the Act must demonstrate compliance with Rule 651(c), even when prior counsel had filed a valid Rule 651(c) certificate. *Id.* ¶ 12.

¶ 44    The court determined that, because of initial postconviction counsel's "presumptively reasonable representation and compliance with Rule 651(c)," all that remained for second postconviction counsel to do was orally argue at the hearing on the State's motion to dismiss. *Id.* ¶ 30. In other words, initial postconviction counsel already determined whether any amendment to the *pro se* filings were necessary to shape the defendant's "complaints" into the proper legal form. *Id.* ¶ 32. As such, second postconviction counsel did not undertake to represent the defendant on the *pro se* petition that he filed, and "was not required to independently demonstrate compliance with Rule 651(c)." *Id.* ¶¶ 32, 38. Rather, all that remained for second postconviction counsel was to argue against the State's motion to dismiss. *Id.* ¶ 38.

¶ 45 Therefore, pursuant to *Smith*, by virtue of initial postconviction counsel filing a Rule 651(c) certificate, a rebuttable presumption arose that defendant received reasonable assistance of postconviction counsel. See *id*. ¶¶ 28-29. Here, initial postconviction counsel certified that he complied with the duties specified in Rule 651(c). Accordingly, private postconviction counsel, who represented defendant at the hearing on the State's motion to dismiss, "was not required to independently demonstrate compliance with Rule 651(c)." *Id*. ¶ 38.

¶ 46 Defendant next contends that he was denied reasonable assistance of postconviction counsel. First, he contends that none of his postconviction attorneys amended his *pro se* filings to allege that he was denied effective assistance of appellate counsel where appellate counsel failed to raise a *Chambers* claim on direct appeal. Second, he contends that his postconviction attorneys did not reshape his claim that he was denied due process by police coercion into a constitutional claim that he was denied effective assistance by trial counsel's failure to present Key's testimony to corroborate this claim.

¶ 47 Defendant argues that all three postconviction attorneys had the same duty to amend his *pro se* filings. We disagree. Here, initial postconviction counsel was defendant's attorney at the time that defendant's *pro se* claims "needed to be shaped into proper legal form." *Id*. ¶ 19. Moreover, initial postconviction counsel filed a Rule 651(c) certificate and a supplemental petition. Thus, the question is whether initial postconviction counsel rendered reasonable assistance when amending the *pro se* filings. See *Id*. ¶ 38 ("if postconviction counsel performs unreasonably—even after a presumption has arisen that there has been compliance with Rule 651(c)—postconviction petitioners are not foreclosed from pursuing a claim that counsel failed to provide a reasonable standard of representation").

¶ 48    "[T]he purpose of Rule 651(c) is to ensure that counsel shapes the [defendant's] claims into proper legal form and presents those claims to the court." *Perkins*, 229 Ill. 2d at 43-44. Counsel creates a rebuttable presumption of reasonable assistance by filing a Rule 651(c) certificate. *Addison*, 2023 IL 127119, ¶ 21. A defendant bears the burden to rebut that presumption by showing postconviction counsel did not substantially comply with the requirements of the rule, *i.e.*, by demonstrating counsel did not make all necessary amendments to the *pro se* petition, including amendments necessary to overcome applicable procedural bars. *Id*. As discussed, we review counsel's compliance with Rule 651(c) *de novo*. *Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 49    Here, defendant contends that initial postconviction counsel violated Rule 651(c) by failing to amend his *pro se* filings to present his claims in appropriate legal form. Specifically, defendant alleges that initial postconviction counsel failed to allege ineffective assistance of appellate counsel on direct appeal for failure to raise a *Chambers* claim in order to overcome forfeiture. He notes that the claim was of record when Coleman's alleged confession was the subject of a motion *in limine* and included in a posttrial motion.

¶ 50    When a defendant asserts claims in a postconviction proceeding "that could have been raised on direct appeal, he can avoid the procedural bar of forfeiture by casting his claims as ineffective assistance of appellate counsel for failing to raise the issues on direct appeal." *Addison*, 2023 IL 127119, ¶ 23.

¶ 51    *Addison* is instructive. In that case, our supreme court found the defendant received unreasonable assistance when postconviction counsel did not amend the defendant's *pro se* postconviction petition to include allegations of ineffective assistance of appellate counsel. *Id.*

¶¶ 23-25. There, the defendant's *pro se* petition raised 15 issues and asserted that appellate counsel failed to raise 14 of them on direct appeal. *Id.* ¶ 23.

¶ 52    The court noted that the petition showed that the defendant understood the "need" to frame these issues as ineffective assistance of appellate counsel in order to overcome the "procedural bar of forfeiture." *Id.* Yet, while postconviction counsel filed an amended petition raising five issues, all of which could have been raised on direct appeal, the amended petition "did not assert any claims of ineffective assistance of appellate counsel and nowhere alleged any way in which appellate counsel was ineffective." *Id.* ¶ 24. The State filed a motion to dismiss arguing, relevant here, that the defendant's claims were forfeited because they could have been raised on direct appeal. *Id*. ¶ 25. Despite the State's written and oral arguments that the defendant's claims were procedurally barred because they were not raised on direct appeal, postconviction counsel did not thereafter amend the petition to allege ineffective assistance of appellate counsel and "never once countered the State's assertion that [postconviction counsel] had failed to allege ineffective assistance of appellate counsel." *Id.*

¶ 53    Our supreme court was therefore "faced with the unusual situation in which postconviction counsel, in one significant sense, made the *pro se* petition worse by amending it." *Id*. ¶¶ 24-25 (noting that postconviction counsel "*eliminated* the necessary allegations [regarding ineffective assistance of appellate counsel] that defendant had included in the *pro se* petition" (emphasis in original)). The court explained that although postconviction counsel determined that five claims were worth pursuing, "counsel failed to shape the claims into the proper form." *Id*. ¶ 26. The court therefore found that postconviction counsel provided unreasonable assistance and remanded the

matter for compliance with Rule 651(c). *Id.* ¶ 33. The court did not consider whether the claims raised in the petition had merit. *Id.*

¶ 54    The court specifically rejected the State's argument that remand was not required because the circuit court dismissed the petition on the merits rather than finding that the claims were forfeited. *Id.* ¶ 39. The court explained that it was "simply not possible to tell from this record that forfeiture" and the failure to allege ineffective assistance of appellate counsel "played no part" in the circuit court's decision to dismiss. *Id.* ¶ 40. Moreover, the court noted that its previous decision in *People v. Turner*, 187 Ill. 2d 406 (1999), on a "more fundamental level," stood for the proposition that "it would not be appropriate to affirm the dismissal of [a postconviction] petition when counsel had not shaped the claims into the proper form." *Id.* ¶ 41.

¶ 55    Similarly, here, we find that, based on this record, defendant has rebutted the presumption of reasonable assistance created by initial postconviction counsel's Rule 651(c) certificate. *Id.* ¶ 21.

¶ 56    In the case at bar, the supplemental postconviction petition alleged that the trial court denied defendant the opportunity to present a defense when it barred evidence that Coleman "confessed" and raised a free-standing claim of actual innocence based upon Coleman's alleged confession. However, despite the fact that these claims were based on the trial record and could have been raised on direct appeal, initial postconviction counsel did not include a claim of ineffective assistance of appellate counsel for failure to raise them on direct appeal. See *id.* ¶ 23 (when raising postconviction claims that could have been raised in direct appeal, a defendant "can avoid the procedural bar of forfeiture by casting his claims as ineffective assistance of appellate counsel for failing to raise the issues on direct appeal").

¶ 57    Thereafter, in response to the State's argument in its motion to dismiss that these claims should have been raised on direct appeal, initial postconviction counsel did not seek leave to add a claim of ineffective assistance of appellate counsel to the supplemental postconviction petition. Rather, initial postconviction counsel concluded that these claims could not have been raised on direct appeal because the record did not contain a photograph of Coleman. However, initial postconviction counsel's assertion that the record on direct appeal did not contain a photograph of Coleman was incorrect, as defendant identified photographs of Coleman at trial. See Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013) (postconviction counsel must, *inter alia*, examine the record of the trial proceedings). Consequently, these claims could have been raised on direct appeal as the State contended, yet initial postconviction counsel did not seek leave to amend the supplemental petition to include a claim of ineffective assistance of appellate counsel for failure to raise them on direct appeal. See *Addison*, 2023 IL 127119, ¶ 26 ("We fail to see how it can be reasonable assistance of counsel for an attorney to identify claims worth pursuing but then fail to shape them into proper form."). Accordingly, based on this record, defendant has overcome the rebuttable presumption, created by the filing of a Rule 651(c) certificate, that initial postconviction counsel provided reasonable assistance. *Id.* ¶ 21.

¶ 58    Finally, we note that, based upon the reasoning of *Addison*, we need not consider whether defendant's claims had merit. See *id.* ¶¶ 33-42. As our supreme court explained, when postconviction counsel fails to comply with Rule 651(c), "our case law dictates that the cause should be remanded without a consideration of whether the petition's claims have merit." *Id.* ¶ 33. This is because "on a more fundamental level," it would be inappropriate to evaluate the merits of

a defendant's claims when postconviction "counsel had not shaped the claims into the proper form." *Id.* ¶ 41.

¶ 59    Accordingly, because initial postconviction counsel failed to fulfill his duties under Rule 651(c), we reverse the circuit court's dismissal of the supplemental petition and remand this cause to the circuit court for the appointment of new postconviction counsel, so that defendant has the opportunity to replead his postconviction petition with the benefit of reasonable assistance of counsel. See *id.* ¶¶ 41, 44; see also *People v. Schlosser*, 2017 IL App (1st) 150355, ¶ 36 (postconviction counsel's failure to provide a reasonable level of assistance requires appointment of new counsel on remand). Based on our disposition, we do not reach defendant's other contention of unreasonable assistance.

¶ 60    Reversed; remanded.