2025 IL App (1st) 230320-U

No. 1-23-0320

Filed August 6, 2025

Third Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 6124 (01) |
| | ) | |
| WILLETTA ELLIS, | ) | Honorable |
| | ) | Joanne Rosado, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: We remand for new second-stage proceedings upon finding Postconviction counsel did not substantially comply with the duties required by Illinois Supreme Court Rule 651(c).

¶ 2    Pursuant to a fully negotiated plea agreement, Willetta Ellis pled guilty to first degree murder and was sentenced to 25 years' imprisonment. Currently, she appeals the circuit court's second stage dismissal of her postconviction petition. Among her claims on appeal, Ellis argues

her appointed postconviction counsel failed to fulfill their duties required by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). We agree and remand for new second stage proceedings.[1]

¶ 3                                                    I. BACKGROUND

¶ 4        Ellis's conviction relates to the 2009 shooting death of Michael Dabney. According to the factual basis offered at Ellis's plea hearing, she owed Dabney over $1400 for drugs he had given her on credit. Ellis conspired with her husband,[2] Otto Lee, to have Dabney killed. They solicited Darvell Williams, the boyfriend of one of their daughters, to shoot Dabney and supplied Williams with a handgun. Ellis arranged for Dabney to ride along with the trio under the pretext that they were driving to the bank to obtain funds to pay the debt. Upon passing under a viaduct, Williams fatally shot Dabney. Ellis walked home while Lee and Williams placed the body in an abandoned building.

¶ 5        Two weeks later, police questioned Ellis about Dabney's murder. After initially stating she was not involved, Ellis gave an electronically recorded interview (ERI) confessing to her role in the crime.

¶ 6        Ellis was charged with multiple counts of first degree murder, with some counts seeking an extended term of 60 to 100 years. A mandatory firearm enhancement would also apply upon conviction based on the allegations in the indictment.

¶ 7        Ellis filed a motion to quash arrest and suppress her statements. After a hearing, the trial court found Ellis had gone to the police station voluntarily and was only arrested after her daughters gave statements contradicting her initial statement.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2]The record indicates Ellis and Otto Lee were not legally married. Ellis's brief, however, refers to Otto as her husband. Illinois ceased recognizing common law marriage in 1905. 750 ILCS 5/214 (West 2022); *Wilson v. Cook*, 256 Ill. 460, 466 (1912).

¶ 8        The State offered Ellis plea terms of 25 years under an amended count of first degree murder. Ellis rejected the offer at a December 29, 2014, status hearing. The trial court addressed her, stating, "All bets are off now, you understand that? You understand what you are looking at, if you go to trial and you lose? You are going to be in jail for the rest of your life. You understand that?" Ellis replied that she understood. Ellis's counsel informed the court she was taking over the case from Ellis's prior counsel, who was retiring, and she would need time to prepare for trial. The court remarked: "Unfortunately for you, this is the oldest case on my call, a 2009 case. It is an embarrassment to me this case is still on the call. I'm going to ask you to get up to speed. We are going to trial on this as soon as possible."

¶ 9        According to a February 4, 2015, transcript, Ellis's counsel previously requested on January 14, 2015, that Ellis undergo a behavioral clinical examination (BCX). No transcript from January 14, 2015, is in the record before us. Nor does the record reveal why counsel requested the BCX. A second motion to suppress statements on the grounds that her confession was involuntary was pending. The court granted the request for a BCX, and Ellis was examined on February 9, 2015. The examining psychiatrist found Ellis fit to stand trial and that she understood the *Miranda* warnings she received in her ERI.

¶ 10        At a March 5, 2015, status hearing, Ellis directed her counsel to ask the State if it would reoffer the same plea terms she rejected in December. The State did so, and Ellis entered a guilty plea to an amended count of first degree murder. She also swore to the factual basis, which was read into the record by the State. The court found her plea voluntary and knowing.

¶ 11        Ellis never filed a motion to withdraw her guilty plea. She did, however, make three separate requests for free copies of the transcripts from her case. The court denied each.

¶ 12        In 2018, Ellis filed a *pro se* postconviction petition, which she verified by notarized signature. The petition enumerated six "[c]onstitutional violations:" (1) ineffective assistance of counsel, (2) due process of allocution violated, (3) self incrimination, (4) right to speedy trial, (5) right to have witnesses called, and (6) failure to get independent psychological testing for fitness. This list appeared alone, without further explanation.

¶ 13        Separately, the petition asserted that Ellis's guilty plea should be withdrawn as it was "entered into under coercion and unknowingly and not intelligently accepted." Ellis further claimed she was innocent and stated she would have gone to trial instead of pleading guilty had she "been made fully aware of court proceedings and waivers."

¶ 14        Inconsistent with her initial list of claims, the petition asserts three contentions under the headings: (1) Ineffective Assistance of Counsel, (2) "Actual Innocence Claim," and (3) "Unfit to Stand Trial." Under ineffective assistance, Ellis stated that her plea counsel took over the case six months before the guilty plea but failed to "establish a defense," coerced her into pleading guilty, and failed to explain the ramifications of the guilty plea. For actual innocence, Ellis asserted witnesses were coerced into making false statements implicating her and plea counsel failed to investigate. As to fitness, Ellis claims she was not fit to enter a guilty plea and plea counsel failed to obtain an examination from an independent psychologist.

¶ 15        Ellis attached four of her own affidavits. In the first, she asserted she was not involved in Dabney's murder and her daughter Bianca could provide an alibi. She further claimed a detective coerced her confession while she was "strung out on cocaine." The detective supplied her with what to say and threatened to induce Dabney's family and fellow gang members to take revenge on Ellis and her family.

¶ 16    In a second affidavit, Ellis claimed a psychologist who evaluated her before her plea yelled at her angrily when Ellis stated she did not understand what *Miranda* rights were. In addition, Ellis could not read the questions on a computer administered evaluation and, since the evaluator would not assist, she blindly marked answers. Unlike the others, this affidavit was unnotarized.

¶ 17    In her third affidavit, Ellis averred she pled guilty out of fear after the trial judge showed frustration with the delay in the case and told her she would be sentenced to natural life in prison if she were convicted at trial.

¶ 18    Lastly, Ellis's fourth affidavit states that she informed her plea counsel that her three daughters, Beverly, Amy, and Bianca, were threatened and coerced to give false statements implicating her in Dabney's murder. But plea counsel told her not to worry about her daughters because she would get Ellis a "good plea deal."

¶ 19    The court advanced Ellis's petition to the second stage of proceedings and appointed counsel to assist her. In August 2019, counsel filed a "Supplemental Petition." The supplemental petition stated that Ellis's *pro se* petition was incorporated by reference and a copy was attached. Counsel noted that the *pro se* petition had raised three claims: ineffective assistance, actual innocence, and the trial court coerced her into pleading guilty. The supplemental petition asserted that the trial judge told Ellis she would receive "natural life" if she lost at trial, but the statement was "not of record in the trial transcripts." The supplemental petition added that, based on Ellis's affidavits, she was also claiming: plea counsel coerced her to plead guilty; she was unfit to enter a plea; and "some other constitutional violations including failure to interview and call witnesses." An affidavit from Otto Lee was attached to support Ellis's actual innocence claim, indicating only he and Williams were responsible for Dabney's murder: Ellis was not present and had not planned

it. An affidavit from Bianca Lee was also attached, attesting that she was coerced into giving a false statement implicating Ellis.

¶ 20        Counsel filed a certificate in accordance with Rule 651(c) attesting (1) she consulted with Ellis to ascertain her contentions, (2) examined the transcript of the guilty plea, and (3) made an amendment to the *pro se* petition necessary for adequate presentation of Ellis's contentions. Appointed counsel passed away sometime later, and a new attorney was appointed. A new judge presided over the matter as well, as the judge who accepted Ellis's plea was assigned to a different district.

¶ 21        The State filed a motion to dismiss the petition. Among other arguments, the State noted one of Ellis's affidavits was unnotarized and she provided an affidavit from only one of her daughters, despite asserting all three would support her claim.

¶ 22        After a hearing on the State's motion, the trial court dismissed the petition. Ellis appeals.

¶ 23                                II. ANALYSIS

¶ 24        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2018)) enables an imprisoned person to collaterally challenge their conviction or sentence based on a substantial denial of federal or state constitutional rights. The Act provides a three-stage mechanism to review such claims. *People v. Agee*, 2023 IL 128413, ¶ 36. At the first stage, the circuit court reviews a petition independently to assess whether any of its claims have an arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). If so, the court advances the petition to the second stage where counsel may be appointed. *Id*. at 10; 725 ILCS 5/122-4 (West 2018). After consultation with the defendant and examination of the record, counsel may file an amended petition. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006); Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 25 The State may file an answer or a motion to dismiss. *Agee*, 2023 IL 128413, ¶ 37. A motion to dismiss tests the legal sufficiency of the petition. *People v. Domagala*, 2013 IL 113688, ¶ 35. To advance to a third stage evidentiary hearing, the petitioner bears the burden to make a substantial showing of a constitutional violation. *Id*. All well-pleaded factual allegations in the petition and accompanying documentation are taken as true, and the court determines whether, if proven at an evidentiary hearing, those facts would entitle the petitioner to relief. *Id*. If so, the petition should advance. *Agee*, 2023 IL 128413, ¶ 37. We review the circuit court's dismissal of a petition at the second stage *de novo*. *Id*. ¶ 34.

¶ 26 On appeal, Ellis asserts three arguments: (1) she made a substantial showing that her guilty plea was involuntary since the judge stated he would jail her for life if she were convicted at trial, (2) plea counsel was ineffective for failing to investigate her daughter Bianca's potential testimony, and, (3) in the alternative, the matter should be remanded for new second stage proceedings because appointed counsel failed to perform their duties as required by Rule 651(c). Since we agree with the third contention, we will not address the first two.

¶ 27 Petitioners have no constitutional right to the assistance of counsel in postconviction proceedings. *People v. Custer*, 2019 IL 123339, ¶ 30. The Act, however, provides for the appointment of counsel for indigent petitioners. 725 ILCS 5/122-4 (West 2018). And our supreme court has interpreted the Act to entitle a petitioner to a reasonable level of assistance, which is less than the level afforded by the federal and state constitutions. *People v. Addison*, 2023 IL 127119, ¶ 19. "Counsel is appointed not to protect postconviction petitioners from the prosecutorial forces of the State but to shape their complaints into the proper legal form and to present those complaints to the court." *Id*.

¶ 28    To ensure petitioners receive reasonable assistance, Rule 651(c) requires postconviction counsel to (1) consult with the petitioner either by mail or in person to ascertain their contentions of deprivation of constitutional rights, (2) examine the record of proceedings at the trial, and (3) make any amendments to the petitioner's petition necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Compliance with the Rule is mandatory. *People v. Perkins*, 229 Ill. 2d 34, 50 (2007). Postconviction counsel establishes compliance with Rule 651(c) by filing a certificate representing that counsel fulfilled these requirements. *Id.*

¶ 29    The filing of a Rule 651(c) certificate creates a rebuttable presumption that counsel provided reasonable assistance in accordance with the Rule at the second stage. *People v. Carson*, 2024 IL App (1st) 221644, ¶ 18. The petitioner bears the burden of overcoming this presumption by demonstrating postconviction counsel failed to substantially comply with the duties mandated by Rule 651(c). *Addison*, 2023 IL 127119, ¶ 21.

¶ 30    Ellis first argues her postconviction counsel failed to adequately examine the record and make necessary amendments to adequately present her involuntary guilty plea claim. In one affidavit attached to her *pro se* petition, Ellis attested:

> "Judge Hennelly, stated in open court that 'this case had dragged on too long and if I went to trial he would give me natural life if I lost.' He made this statement in frustration that my attorney whom [*sic*] had my case for about 6 months asked for a continuance to prepare for trial. He then asked me 'do you understand me?' To which I said 'yes.' "

Ellis supplied the internal quotation marks, suggesting these were the judge's words. The pronouns she used in the first quote, however, show she was paraphrasing the court's statement. In the only reasonable interpretation, "I" and "me" must refer to Ellis and "he" to the judge, since the judge would not have referred to himself in the third person and Ellis in the first. Nevertheless, Ellis's

affidavit is in harmony with the transcript from her December 29, 2014, court appearance, in which the court stated: "[I]f you go to trial and lose[, y]ou are going to be in jail for the rest of your life." Thus, Ellis's affidavit was likely paraphrasing based on her memory. She had requested but was refused copies of the transcripts before filing her petition. And, though not verbatim, her affidavit parallels the transcript in meaning.

¶ 31 Despite the strong resemblance between Ellis's affidavit and the December 29, 2014, transcript, the supplemental petition filed by appointed counsel asserted that the court's statement referenced in Ellis's affidavit was "not of record in the trial transcripts." Likewise, in the hearing on the State's motion to dismiss, substitute counsel maintained that the statement was "nowhere to be found in any of *** the transcripts." The State, for its part, argued Ellis's claim lacked merit *because* the statement was not in the record. Accordingly, the trial court understood Ellis's claim to be premised on a remark not contained in the record. In dismissing the claim, the court stated, "[T]here's no proof that Judge Hennelly told her that she was going to get natural life. As you stated, there's no transcript that indicates that." Thus, the postconviction proceedings reveal appointed counsel failed to examine the December 29, 2014, transcript. Indeed, in her Rule 651(c) certificate, counsel stated that she had "examined the transcripts of the guilty plea," indicating she only examined the March 5, 2015, transcript. On appeal, Ellis takes an inconsistent position, clarifying that her claim is, in fact, based on the court's December 29, 2014, statement. Her clarification indicates appointed counsel failed to examine the transcript and consult with Ellis to determine that Ellis was referring to the court's on-the-record statement. Thus, appointed counsel failed to provide reasonable assistance regarding this claim.

¶ 32 Second, Ellis argues postconviction counsel failed to amend her unnotarized affidavit with a notarized one. Lack of notarization of supporting affidavits is fatal at the second stage of

postconviction proceedings. *People v. Allen*, 2015 IL 113135, ¶ 35. Ellis's affidavit regarding her fitness and the allegedly improper fitness evaluation was not notarized. Thus, it was defective on its face. Amendment with a notarized affidavit was necessary to adequately present Ellis's claim. Therefore, postconviction counsel's failure to do so was a failure to provide reasonable assistance. See *People v. Landa*, 2020 IL App (1st) 170851, ¶ 62 (finding postconviction counsel's failure to have petitioner's affidavit notarized a failure to provide reasonable assistance).

¶ 33    Third, Ellis contends postconviction counsel failed to make necessary amendments to include affidavits from her daughters Beverly and Amy. To show a petition's allegations are "capable of objective or independent corroboration" (*People v. Collins*, 202 Ill. 2d 59, 67 (2002)), the Act requires a petition to have "attached thereto affidavits, records, and other evidence supporting its allegations or shall state why the same are not attached." (725 ILCS 5/122-2 (West 2018)). Ellis's *pro se* petition indicated her daughters, Beverly, Amy, and Bianca, could testify in support of her claims, but no affidavits from her daughters were attached. Postconviction counsel is obliged to attempt to obtain affidavits from witnesses offering support for its claims when those witnesses are identified by name in the petition. *People v. Johnson*, 154 Ill. 2d 227, 247 (1993). When such affidavits are absent, a court may presume postconviction counsel made a concerted effort to obtain the affidavits but was unable to do so. *Id*. at 241. Ellis has not rebutted this presumption. On the contrary, postconviction counsel obtained an affidavit from Bianca that was not attached to Ellis's *pro se* petition. Nothing in the record shows postconviction counsel failed to attempt to obtain affidavits from Beverly and Amy. *Cf. Id*. (presumption rebutted when postconviction counsel filed an affidavit as a supplemental record on appeal admitting they made no effort to obtain affidavits); *People v. Waldrop*, 353 Ill. App. 3d 244, 250 (2004) (presumption rebutted when postconviction counsel incorrectly argued at a second stage hearing that affidavits

were not required); *People v. Urzua*, 2023 IL 127789, ¶ 63 (presumption rebutted when postconviction counsel incorrectly argued an affidavit was not required to be notarized because it was a factual question to be resolved at an evidentiary hearing). Accordingly, Ellis has failed to rebut the presumption of reasonable assistance on this point.

¶ 34     Last, Ellis argues postconviction counsel failed to amend the petition to make necessary allegations for her actual innocence claim. The supplemental petition states that Otto's affidavit is offered to support her actual innocence claim. It then recites the elements required to establish such a claim with a case citation. But the supplemental petition provides no explanation as to how Ellis satisfied those elements. The failure to amend a petition to allege essential elements of the petitioner's claim results in inadequate presentation of the claim and amounts to unreasonable assistance. *People v. Turner*, 187 Ill. 2d 406, 413 (1999).

¶ 35     In addition to these deficiencies, we observe that the Act does not contemplate the filing of a "supplemental petition." Though not prohibited, we do not look favorably on this practice. This case illustrates why "supplementing" a petition tends to add confusion rather than facilitate the presentation and adjudication of a *pro se* petitioner's claims. Ellis's *pro se* petition was poorly organized. It contained a list of six claims with no supporting allegations. Three other claims followed under headings inconsistent with her initial list. Some allegations did not correspond to the subject heading they appeared under. Rather than clarifying Ellis's claims, the supplemental petition added confusion. It repeated labels of claims but failed to state the allegations that supported those claims. The supplemental petition also created ambiguity. For instance, it was unclear whether Ellis had amended her actual innocence claim to be premised solely on Otto's affidavit or if his affidavit was offered in addition to the allegations in her *pro se* petition. Ultimately, these pleadings left it difficult to discern what exactly Ellis was claiming.

¶ 36        Postconviction proceedings are civil in nature and, except where the Act conflicts, civil practice rules apply. *People v. Bailey*, 2017 IL 121450, ¶ 29. The Civil Practice Code requires each claim to be stated in a separate count, separately pleaded, and divided into paragraphs containing a separate allegation. 735 ILCS 5/2-603 (West 2024). We encourage postconviction counsel to present pleadings in this form.

¶ 37        In sum, we find postconviction counsel failed to comply with Rule 651(c), and Ellis has rebutted the presumption that counsel provided reasonable assistance. When counsel fails to comply with Rule 651(c), the matter should be remanded without consideration of whether the petition's claims have merit. *Addison*, 2023 IL 127119, ¶ 33. Accordingly, we do not consider the other issues raised in this appeal and express no opinion on the merits of any claims in Ellis's petition.

¶ 38        III. CONCLUSION

¶ 39        Based on the foregoing, we vacate the order dismissing Ellis's postconviction petition and remand for new second stage postconviction proceedings.

¶ 40        Vacated and remanded.